JUDGE SCHEINDLIN

07 CV 6832

368-07/GMV/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Gina M. Venezia (GV 1551)
Pamela L. Schultz (PS 0335)



RECEIVED
JUL 30 2007
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STAR LEGEND S.A.,

Plaintiff,

- versus -

INDUSTRIAL CARRIERS INC.,

Defendant.

07 Civ. _____ (_____)

VERIFIED COMPLAINT

Plaintiff STAR LEGEND S.A. (hereinafter "STAR LEGEND") for its Verified

Complaint against Defendant INDUSTRIAL CARRIERS INC. (hereinafter "INDUSTRIAL

CARRIERS"), alleges upon information and belief as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party. This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331. Federal jurisdiction also exists because the action arises under the New York Convention

on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 et seq. and/or

the Federal Arbitration Act, 9 U.S.C. §1 et seq.

2.     At all times material hereto, Plaintiff STAR LEGEND was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Banco Aliado Building, 8th Floor, Beatriz M. de Cabal Street, Apartado Postal 5108, Panama 5, Republic of Panama.

3.     At all times relevant hereto, Defendant INDUSTRIAL CARRIERS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Trust Company Complex, Ajeltake Island, Majuro, Marshall Islands, MH96960.

4.     On or about August 29, 2005, Plaintiff STAR LEGEND, as Owners of the SD GLORY, entered into a maritime contract of charter party for one time charter trip for iron ore/irón ore pellets in bulk.  A copy of the charter party is annexed as Exhibit A.

5.     In violation of clauses 62 and 79 of the charter party, INDUSTRIAL CARRIERS supplied bunkers to the M/V SD GLORY which did not comply with the required standards and caused damages to Owners, including but not limited to, expenses for cleaning of the tanks, loss of hire during the cleaning, loss of freight, survey and agency fees, off-hire deductions, etc.

6.     The charter party provides for the application of English law and all disputes between the parties are to be resolved by arbitration in London; arbitration has already been commenced and STAR LEGEND specifically reserves its right to arbitrate the substantive matters at issue.

7.     This action is brought to obtain jurisdiction over Defendant and to obtain security in favor of Plaintiff STAR LEGEND in respect to its claims against Defendant and in aid of London arbitration proceedings.

8.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

9.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

10.    Plaintiff damages consist of the following: (a) tank cleaning in the amount of $51,755; (b) loss of five days of charter hire during the cleaning in the amount of $195,958.33; (c) reduction in the quantity of cargo that could be loaded onboard resulting in a loss of freight during the next three charter parties in the amount of $20,626.50; (d) expenses incurred at Singapore for changing filters, fuel care, etc. in the amount of $5,952.01; (e) off-hire deductions in the amount of $1,855.64; (e) expenses for bunker analysis, etc. at Oslo and Lianyungang in the amount of $4,887.76; (f) survey/analysis of Bunker Claims International in the amount of $1,544.48 and (g) accrued fees and costs to date in the amount of $51,015.35.

11.    Plaintiff estimates, as nearly as can be computed, that it will also incur further legal expenses and costs of prosecuting the London arbitration in the amount of $85,000 due to complexity of the issues and interest on its damages are estimated to be $35,744.24 (calculated at the rate of 6% for a period of 2 years, the estimated time for completion of the arbitration in London).

## Request for Rule B Relief

12.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts,

wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter

hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively

hereinafter, "ASSETS"), including but not limited to ASSETS in its name at, moving through, or

being transferred and/or wired to or from banking institutions or such other garnishees who may

be served with a copy of the Process of Attachment issued herein.

13.    The total amount to be attached pursuant to the calculations set forth above is

$454,339.31.

WHEREFORE, Plaintiff STAR LEGEND S.A. prays:

a.    That process in due form of law according to the practice of this Court may issue

against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental

Rule B that all tangible or intangible property of Defendant up to and including

$454,339.31 be restrained and attached, including, but not limited to any cash,

funds, escrow funds, credits, debts, wire transfers, electronic funds transfers,

accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter

hire, of, belonging to, due or being transferred from or for the benefit of

Defendant (collectively hereinafter, "ASSETS"), including but not limited to such

ASSETS as may be held, received, or transferred in its name or as may be held,

received or transferred for its benefit, at, through, or within the possession,

custody or control of such banking institutions and/or any such other garnishees

who may be served with a copy of the Process of Maritime Attachment and

Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
      July 30, 2007

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff STAR LEGEND S.A.

                        By: _____
                            Gina M. Venezia (GV 1551)
                            Pamela L. Schultz (PS 0335)
                            80 Pine Street
                            New York, NY  10005
                            (212) 425-1900

## ATTORNEY VERIFICATION

State of New York    )
                  ) ss.:
County of New York  )

GINA M. VENEZIA, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
30 day of July 2007

_____
Notary Public

Lisa M. Morales
Notary Public, State of New York
No. 01MO6162004
Qualified in the Bronx
Commission Expires Feb. 26, 2011

# ORIGINAL
# Time Charter

**GOVERNMENT FORM**

*Approved by the New York Produce Exchange*

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

---

## This Charter Party, made and concluded in *London*................................................*29th* day of ..*August*.............. *2005* 19....

1  Between *STAR LEGEND S.A., PANAMA*
2  Owners of the good *Greek flag*
3  *Steamship/Motorship "SD GLORY"*.........................................................................of .....
4  of *35,954* ............. tons gross register, and *21,592* ............. tons net register, having engines of ............. indicated horse power
5  and with hull, machinery and equipment in a thoroughly efficient state, and classed *NKK*
6  at.................................................................. of about *2,690,008* .............................. cubic feet grain bale capacity, and about *68,634 metric*.............. tons of *62/40* lbs.
7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,
8  allowing a minimum of fifty tons) on a draft of *13,202 meters* feet- ............. *Summer* freeboard *salt water, inclusive of permanent bunkers,*
9  which are of the capacity of about ................. inches on a ............. *tonoffuel*- and capable of steaming, fully laden, under good weather
10  conditions about ...........knots on a consumption of about ............. tons of *best Welsh coal - best grade fuel oil - best grade Diesel oil, and as further described in*
11  *clause 62 thereof*
12  now.....

---

## Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

13  ...........*and Industrial Carriers Inc.* .................................................... Charterers of the City of *Majuro, marshall Islands*
14  about- ...*one time charter trip via safe port(s), safe berth(s), safe anchorage(s) always afloat, always within Institute Warranty Limits via*
15  *Black Sea excluding Sea of Azov with iron ore/iron ore pellets in bulk only always excluding DRI/DRP/HBI. Iron ore concentrates to*
   *be also allowed provided same is loaded in accordance with IMO, local and international regulations and recommendations including*
   *but not limited to Master/Owners being provided with a certificate showing moisture content of the cargo and info concerning any*
   *specific hazards and precautions to be followed based on the history of carriage of the cargo within below mentioned trading limits.*
16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17  the fulfillment of this Charter Party.
18  Vessel to be placed at the disposal of the Charterers, at on dropping last outward sea pilot one safe port *Egypt Mediterranean intention*
19  *Damietta at any time day or night, Sundays, Holidays included* ....................................................................
20  in such dock or at such wharf or place (where she may safely lie, always afloat, at all times-except as otherwise provided in clause No. 6, as
21  the Charterers may direct, if such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her arrival first load port
22  ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the *ordinary cargo* service, having water ballast,
   winches and
23  donkey-boiler with sufficient steam power, or if not equipped with donkey-boiler, then other power sufficient to run all the winches at one and the same
24  time (and with full complement of *competent and certificated* officers, seamen, and engineers and firemen for a vessel of her tonnage), to be employed,
   in carrying lawful merchan-
25  dise, including petroleum or its products, in proper containers, excluding ....*See Clause 37*.................................................
26  (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
27  all necessary fittings and other requirements to be for account of Charterers), in such lawful trades between safe port and/or ports in British North
28  America and/or United States of America and/or West Indies, and/or Central America and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29  Mexico, and/or South America-



tabbies®

EXHIBIT

A

30 ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~

31 ~~October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

32 the vessel shall trade in any part of the world within Institute Warranties Limits. .............................

33 Acceptance of delivery by Charterers shall not constitute waiver of Owners' obligations set above. .............................

34 .............................

35 as the Charterers or their Agents shall direct (see Clause 60), on the following conditions:

36 1. That the Owners shall provide and pay for all provisions, all garbage removal except compulsory garbage removal which is to be for

37 Charterers' account, wages and consular shipping and discharging fees of the Crew; shall pay for the

38 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including fresh and boiler water and maintain her class and keep

39 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.

40 2. That whilst on hire the Charterers shall provide and pay for all the fuel and MDO except as otherwise agreed, Port Charges, Compulsory

41 and Customary including Bosporus/Dardanelles Pilotages, Agencies, Commissions,

42 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

43 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

44 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

45 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

46 of six months or more.

47 ~~Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual energy, but~~

48 ~~Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards~~

49 ~~for dunnage, they making good any damage thereto.~~

50 ~~3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

51 ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than .... tons and not more than .... tons.~~

52 ~~.... tons and to be re-delivered with not less than ....... tons~~

53 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD 17,220 per day prorata including overtime ~~United States Currency per-ton-of-vessel's-total-deadweight-carrying-capacity-including-bunkers-and stores, on .... summer freeboard, per Calendar Month,~~ commencing on and from the hour of day of her delivery, any time day or night, Sundays and and after the same rate for any part of a day ~~month~~-hire to continue until the hour of the day of her re-delivery, any time day or night, Sundays and Holidays included in like good order and condition, ordinary

54 wear and tear excepted, to the Owners (unless lost) at ~~--~~ on dropping last outward sea-pilot safe port Singapore-South Japan Range port in Charterers' option any time day or night, Sundays and Holidays included unless otherwise mutually agreed GMT to apply both ends ~~Charterers are to give Owners not less than ....... days notice of vessel's expected date of re-delivery, and probable port.~~

55 5. Payment of said hire to be made to Owners' bank as per Clause 66 in United States Currency, every 15 days

56 semi-monthly in advance, and for the last 15 days half-month or

57 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

58 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

59 hire, or bank guarantee, or on any breach of this Charter Party, subject to Clause 43, the Owners shall be at liberty to withdraw the vessel from the

60 service of the Char-

61 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. First hire and value of bunkers on delivery to be

62 paid within 3 banking days after vessel's delivery. ~~Time to count from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65 Cash for vessel's ordinary disbursements at any port may be advanced as required by the Owners Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68 6. That the cargo or cargoes be laden and/or discharged in any safe dock or at any safe wharf or safe place that Charterers or their Agents may

69  direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70  lie aground.

71      7.   That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's Officers, crew,

73  tackle, apparel, furniture, provisions, stores and fuel. ~~no passengers allowed. Charterers have the privilege of passengers as far as accommodations allow,~~

     ~~Charterers~~

74  ~~paying Owners.......................per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75  ~~incurred in consequences of the carriage of passengers, Charterers are to bear such risk and expense.~~

76      8.   That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78  agency; and Charterers are to load, stow, and trim *and discharge* the cargo at their expense under the supervision of the Captain, who is to sign Bills of

     Lading for

79  cargo as presented, in conformity with Mate's or Tally Clerk's receipts. *Charterers and/or their Agents are hereby authorized by Owners to sign*

     *on Master's behalf the original Bills of Lading as presented in accordance with signed Mate's receipts without prejudice to the Charter,*

     *provided that such authorization can be specifically assigned by Charterers to their nominated Agent.*

     *Procedure for replacement of Bill(s) of Lading:*

     *- Charterers to prepare a Letter of Indemnity as per Owners' P and I Club wording*

     *- Charterers to clarify the exact different between 1nd and 2nd Bill(s) of Lading*

     *- Charterers to confirm that full sets of the initial Bill(s) of Lading are in their*

     *possession*

     *- Charterers to present to Owners repr after everiting with details);*

     *- The full sets of the initial Bill(s) of Lading*

     *- Draft copies of the new Bill(s) of Lading*

     *- Original Letter of Indemnity*

80  *- Owners' representative will fax to Owners copies of initial+ new   Bill(s) of Lading + Letter of Indemnity for Owners' check/approval.*

     *- Only after receiving owners' written authorization Charterers/Charterers' agents will issue/release the new Bill(s) of Lading to*

     *Charterers' orders.*

81  *-All/any expenses/costs incurred by using Owner's P+I representative/agent for above mentioned purposes to be for Charterersaccount.*

     *Procedure For Change Of Destination:*

     *Discharge port(s) shown on Bill(s) of Lading no not constitute a declaration of discharging port(s) and Charterers to have the right to*

     *order the vessel to any port(s) within terms of this charter party.   In this case Charterers to give prior notice thereof well in advance to*

     *Owners and Charterers to provide Owners with Letter of Indemnity in Owners P+I wording under Charterers letterheading signed by*

     *Charterers only. Original Letter of Indemnity to be mailed to Owners as soon as possible.*

82      9.   That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, ~~Officers, or Engineers~~, the Owners shall on

83  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.*But this provision does not effect*

84  *Charterers' right to advance any claim or require Arbitration under Cl. 17 on disputes regarding the conduct of the Master in*

     *prosecution of the voyage and in carrying out the orders and directions of the Charterers.*

85      10.   That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

     with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the

     rate of USD 10,00 *per meal* $14,00 per day, Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to

     victual Tally

86  Clerks, Stevedore's Foremen, etc., *but maximum 3 persons daily* ~~Charterers paying at the current rate per meal for all such victualling.~~ *Cost for*

     *Cables/Entertainment/Victualling to be USD 1.250 per month prorata.*

87      11.   That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

88  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

     terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89 sumption of fuel.

90 12. That the Captain shall use diligence in caring for the ventilation of the cargo *by natural ventilation, weather permitted.*

91 ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~ ........................

92 ...................................................................................

93 ~~on giving written notice thereof to the Owners or their Agents~~ ........ ~~days previous to the expiration of the first-named term, or any declared option.~~

94 14. That if required by Charterers, time not to commence before *00:01 hours 9th September 2005* ........ and should vessel

95 ~~not have been delivered~~ *given written notice of readiness* on or before *24:00 hours 16th September 2005* ........ but not later than 4 p.m. Charterers or

96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *However such cancelling notice to be*

97 *given not later than the time of vessel's delivery.*

98 15. That in the event of the loss of time from deficiency *Master, Officers or Crew, deficiency* of men or stores, fire, breakdown or damages to

99 hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

100 preventing the full working of the vessel, *unless caused by Charterers or their servants,* the payment of hire shall cease for the time thereby lost; and

101 if upon the voyage the speed be reduced by

102 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

103 thereof, and all *direct* extra expenses shall be deducted from the hire.

104 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

105 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

106 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

107 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

108 purpose of saving life and property.

109 ~~17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~
~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~
~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men~~ *See Clause 63.*

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hires* for any amounts due under this Charter, including General

111 Aver-

112 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

113 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
might have priority over the title and interest of the owners in the vessel.

114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115 Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rule 1 to 15, inclusive, 17 to 22, inclusive, and Rule 1 of~~

116 York-Antwerp Rules ~~1924~~ *1974 as amended 1990, in London English Law to apply,* at such port or place in the United States as may be selected

117 ~~by the carrier, and as to matters not provided for by these~~
~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

118 ~~United States money at the rate prevailing on the dates made and disbursements for damage to cargo claimed in foreign currency shall be converted at~~

119 ~~the rate prevailing on the last day of disbursement at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120 ~~bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~

121 ~~or his agent may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

125 ~~United States money.~~

126 ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage, resulting from any cause whatsoever,~~

127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the~~

128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130 ~~goods, if a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131 ~~ships belonged to strangers.~~

~~Provisions to contribute to General Average in accordance with the above are to be included in all bills of lading issued hereunder.~~ *See also Clause 58. Hire*

~~20. Fuel used by the vessel while on fhire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the cost of replacing same, to be allowed by Owners.~~

~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from time of last painting, and payment of hire to be suspended until she is again in proper state for the service.~~

...................................................................

~~22. Owners shall maintain the gear of the ship as fitted, providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling lifts up to three tons, also providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The Charterers to have the use of any gear on board the vessel.~~

~~23. Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging; steamer to provide one winchman per hatch to work winches day and night, Charterers agreeing to pay officers, engineers, winchmen, deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned thereby.~~

~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels, etc." in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder:~~

~~U. S. A. Clause Paramount~~

~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

~~Both-to-Blame Collision Clause~~

~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.~~

25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be withdrawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the port or to get out after having completed loading or discharging, *Vessel not to break/force and not to follow an ice breaker.*

26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The Owners to remain responsible for the navigation of the vessel, *acts of pilots and/or tug boats,* insurance, crew, and all other matters, same as when trading for their own account.

27. A commission of 1.25% ~~2 1/2~~ per cent is payable by the Vessel and Owners to *Carriers Chartering Corporation S.A. of Panama* on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175

28.   An address commission of 2,50 2-1/2 per cent payable to *Charterers* ... ................................................. on the hire earned and paid under this Charter

*Clauses 29 to 82 inclusive together with New Both to Blame Collision Clause, New Jason Clause, Baltime War Clause as attached hereto, are deemed to be fully incorporated in this Charter Party.*

*THE OWNERS*                                                 *THE CHARTERERS*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.



ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

## ADDITIONAL CLAUSES TO THE CHARTER PARTY M/V "SD GLORY"
### DATED 29/08/2005

Clause 29
Owners to keep Charterers well advised of the vessel's program and give Charterers notice on fixing and 7/5/3/2/1 days define Notice of Readiness.

Clause 30
A mutually agreed surveyor to be appointed to perform a joint on/off hire survey at 1st load port / last discharge port respectively. Costs and time to be equally shared however, if surveys are carried at concurrently with loading/discharging then no time is to be deducted from hire.

Charterers to have the option of sending a surveyor and/or their supercargo onboard to make a superficial inspection of the vessel providing Charterers notify Owners of such intention at least 1 working day in advance. Such inspection is to be limited to the deck and hold areas only. Owner's Letter of Indemnity to be signed by all such surveyors/supercargo boarding vessel.

Clause 31. P and I Club
Owners guarantee that the vessel will on delivery be entered with and throughout the currency of this Charter Party remains entered with a protecting and indemnity association, which is member of the International Group of protecting and indemnity clubs. Entry shall include, but not be limited to, full cover for cargo claims of any nature. Charterers shall not be liable except when caused by Charterers and/or their servants and/or their agents when such loss or damage would normally be a risk insured against under the rules of the said protecting and indemnity association or by virtue of a policy of hull the insurance affected on the institute time clauses at Lloyds. Charterers shall be entitled to the benefit of such entry to the extent that the Rules allow.

Clause 32.
The vessel is warranted to be a single-deck self trimmed bulk carrier. Owners warrant that the vessel is able to sail with one hold slack and/or empty.
The vessel to be suitable for grab discharge with no obstructions in holds and no cargo to be loaded in places inaccessible for grab discharge or in deep tanks. Any time lost to cargo being loaded in such inaccessible places to be considered off-hire, and any additional discharging costs to be for Owners' account.



ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 32 (cont..)

The vessel to be fitted with Australian holds ladders.

Owners g uarantee t hat v essel h atch c overs a re t o b e w atertight a ll t hroughout t his charter period and if any hatch cover found defective, same to be rectified at Owners' time and expenses unless such defects are caused by Charterers/ Charterers' servants/stevedores or caused by cargo loaded by Charterers. Charterers also have the right to carry hose rest on all hatches at any time during this Charter. Providing Owners have been notified at least 1 working day in advance.

Clause 33.

Charterers to pay Owners a lumpsum of USD 5,000-in lieu of cleaning holds on redelivery.

Clause 34.

Without prejudice to the generality of Owners' obligations set out in this Charter the vessel will comply with any safety regulations and/or requirements in effect at ports of loading and/or discharging, particular reference is the United States Department of Labour Safety and Health Regulations set forth in Part III of the Federal Register, or any new regulations which might may from time to time come into force replacing same. Although other provisions of this Charter makes it the responsibility of Owners, it is agreed that should the vessel not meet these Safety Rules and Regulations, Owners will make immediate corrective measures and any stevedore standby time and other direct expenses involved, including off-hire, will be for Owners' account.

Clause 35

The vessel to have valid certificate for loading grain without grain fittings when full holds and it is understood that the vessel can sail with two slack holds without bagging, strapping or shifting boards.

The vessel to be delivered with valid deratisation or deratisation exemption certificate and, if these do not cover the whole period of the timecharter and fumigation is again necessary due hereto or due to anything for which Owners are responsible, cost of same and detention to be for Owners' account. If fumigation is necessary on account of cargo carried under this Charter Party cost of same and time to be for Charterers' account including expenses involved with placing crew ashore if same required due nature of fumigation of cargo.



ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 35 (cont..)
For the carriage of grain in bulk the vessel to have on board at any time of this time charter period the valid documents and certificates issued by a recognized Classification Society and certificates issued by Cargo Bureau on the basis of Solas 1974. Furthermore, the vessel has on board approved table of heeling movements for 'filled holds-untrimmed ends' in accordance with IMCO BC XIX/INF.4 or latest up-to-date amendments.

Clause 36.
Throughout the period of the Charter, the vessel shall have on board current valid Panama and Suez Canal measurement certificates and will comply with all applicable requirements, regulations and recommendations so as to avoid delay in transit of these canals.

Clause 37.
The vessel has never called Cuba. Owners guarantee that the vessel is not blacklisted by the International Longshoremen Associations nor any local unions due to previous trade. The vessel has not called at any Siberian or East Russian port since March 1991.

Clause 38.
Owners warrant that at the time the vessel is placed at Charterers' disposal, the vessel shall fulfill the descriptions, particulars and capabilities set forth in this Charter, and shall be tight, staunch and strong, in thoroughly efficient order and condition and in every way fit, manned, equipped and supplied for the service contemplated. Such description, particulars, capabilities and condition of the vessel to be maintained by Owners throughout the period of the vessel's service hereunder, perils of the sea excepted.
The vessel's cargo gear and all other equipment shall at all time be in good working order and comply with the regulations of the countries in which the vessel can be employed, loaded and discharged under this Charter Party (including I.L.O. Convention Number 32 which statutory in the U.S.A. under Public Law 85-742, Part 9- Safety and Health Regulations for longshoring, the United Kingdom Factory and Workshop Act and/or Health and Safety at Work Act) and Owners are to ensure that the vessel is at all times in possession of a valid and up-to-date certificate of efficiency to comply with such regulations.

ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR , ATHENS 106 80, GREECE

Clause 38 (cont..)
If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners' agents to comply with the aforementioned regulations, or because the vessel is not in possession of such valid and up-to-date certificate of efficiency, any delay therefrom shall be for Owners' account and Owners to pay all extra expenses, and hire shall cease until vessel is in a position to comply with aforementioned regulations.

Clause 39. Cargo exclusions
Vessel is employed with iron ore/iron ore pellets in bulk only always excluding DRI/DRIP/HBI. Iron ore concentrates to be also allowed provided same is loaded in accordance with IMO, local and international regulations and recommendations including but not limited to Master/Owners being provided with a certificate showing moisture content of the cargo    and info concerning any specific hazards and precautions to be ˙followed based on the history of carriage of the cargo

All other cargoes are excluded.

Clause 40. Double Banking Clause
(a) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment including adequate and proper tyres and Yokohama fenders to Master's satisfaction as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance
Notice as they reasonably can of the details of any such operations.
If Charterers' equipment are to be placed onboard with vessel's cranes, then weight of same not to exceed safety working load of cranes and vessel's deck/hatchcovers strengths.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSAJAS STR., ATHENS 106 80, GREECE

Clause 40 (cont..)

(d) The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. the vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

Clause 41. Stevedore Damage Clause

The stevedores although appointed and paid by Charterers/ Shippers/ Receivers and/ or their agents, to remain under the direction of the Master who will supervise proper stowage. Charterers to be responsible for damage caused by negligence of stevedores in loading and discharging vessel only when such damage is duly substantiated by the Master's prompt notice of claim served in writing upon the party responsible immediately on occurrence of damage or latest on completion of loading and/or discharging of the vessel at the port concerned. Stevedores damage report to be issued prior to sailing and copy of all correspondence exchanged in this connection must be forwarded promptly to Charterers. In the case of hidden damage then as soon as discovered but not later than vessel's redly. Master shall also co-operate with Charterers or their agents and endeavour to obtain a written acknowledgement by the responsible party causing damage unless the damage should have been made good in the meantime. Charterers have the option of redelivering the vessel without repairing such stevedores damage that do not affect the seaworthiness of vessel or normal working and trading of vessel. Owners agree that damage not affecting seaworthiness or efficiency and safe working of the ship may remain for occasional repair when the ship is to dock for Owners' account so that Charterers to pay the actual cost of repairs of stevedores' damage and additional time used if any. Any damages affecting the vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the vessel, shall be immediately repaired by Charterers at their expense and the vessel is to remain on-hire until such repairs are completed to vessel's class satisfaction.

Clause42.

Payment of Charter hire will be made in accordance with Clause 4, but Owners shall immediately inform Charterers should hire due not have been received on due date. Charterers s hall then within 3 banking days after receiving such notice arrange to rectify the situation. Should Charterers fail to do so, Owners have the right to withdraw the vessel.

ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 60, GREECE

Clause 43.
Should the vessel be put back on a voyage by reason of any accident or breakdown of gear/vessel, the hire shall be suspended from the time of her putting back until she is again in the same position or equivalent and voyage resumed therefrom. The time so lost and the cost of any extra fuel consumed in consequence thereof and expenses directly incurred thereby shall be deducted from hire.

Clause 44.
Should the vessel be arrested during the currency of the Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel, hire under this Charter shall not be payable in respect of any period whilst the vessel remained unemployed as a result of such arrest, i.e. the state of arrest having no bearing on hire unless the vessel is prevented from working thereby. Any direct expenses/losses arising to Charterers due to such arrest to be paid by Owners

Clause 45.
In the event of a strike of a part of the ship's crew preventing the vessel from normal working and sailing, the hire shall be suspended from such time resumption of the work. Any direct expenses/losses arising to Charters due to such event to be paid by Owners.

Clause 46.
Owners always to be responsible for any boycott of the vessel by I.T.F and/or their affiliates.
Should the vessel be boycotted, blockaded or blacklisted in any port or place because of her ownership, management, flag or crew, or conditions on which the crew are employed, all expenses, delays or any other consequences, including off-hire, to be for Owners' account. In the event of the vessel being denied or restricted in the use of port and/or discharging facilities or shore labour and/or tug or pilotage assistance because of actions by Master, Officers or crew, the vessel's flag or ownership or management or the wages or the conditions of employment of their Officers and/or crew or of the Officers and/or crew of any other vessel under the same ownership or management or because of the previous trading of the vessel or any other vessel as aforesaid, hire shall cease for the time hereby lost and Owners shall be responsible for and shall promptly reimburse Charterers all extra expenses which Charterers may incur in trying to solve the situation, including proceeding to an alternative berth or port.

ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 47.
Owners to be responsible for all consequences of smuggling, attempted smuggling, or similar offences by Master, Officers or crew and any detention of the vessel caused thereby to count as off-hire, unless such offences are caused by Charterers' agents or servants, in which case Charterers to be responsible for such consequences and vessel to remain on hire for the entire duration. Any direct expenses/losses arising to Charterers due to such event to be paid by Owners.

Clause 48.
The vessel to work day and night if required by Charterers. All intermediate opening or closing of hatches to be for Charterers' account if performed by shore labour but to be performed by vessel's crew at no cost to Charterers if permitted by local authorities.

Clause 49.
Any delay due to non-compliance or any lack of proper documentation or equipment is to be treated as off-hire and any expenses directly incurred thereby to be for Owners' account, unless such non-compliance is due to the default of Charterers, Sub-Charterers or their Agents.

Clause 50.
Owners may not dry-dock and/or repair the vessel during the currency of this Charter for any purposes. Except in case of emergency.

Clause 51.
Charterers have the right to deduct from last sufficient hire payment(s) estimated value of bunkers on board on redelivery.

Clause 52.
Extra insurance on the vessel due to ship's class and/or ownership, if any, to be for Owners' account. Overage insurance premium, if any, to be for Charterers' account.

Clause 53.
If the vessel is requisitioned for use, she shall be deemed off-hire during the period of requisition and any hire paid in respect of such requisition period shall be for Owners' benefit. Any period during which the vessel is requisitioned shall count as part of the period provided for in this Charter. Charterers have the option to cancel this Charter if the requisition period exceeds 30 consecutive days providing no cargo on board.

ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause54.
If war or actual hostilities that are directly influencing the trading of the vessel break out between any two or more of the following countries: U.K., Russia, U.S.A., France, People's Republic of China, Japan, Germany, Norway, Greece, both Owners and Charterers shall have the right to cancel this Charter. It is understood that war or actual hostilities means war or hostilities directly between these nations and does not include local hostilities or civil war where any of the above countries supports opposing sides.

Clause 55. Stevedores
The Stevedores although appointed b y Charterers are to b e considered Charterers' servants and shall load, stow, dunnage and lash, trim and discharge the vessel under the supervision of the Master. The Master is to supervise the loading, stowage and discharging of cargoes in cooperation with the local authorities.

Clause 56.
Charterers shall give Owners 20/15/5/3/2/1 days notice of expected redelivery time and place and 10/5/3/2/1 days notice of expected date and redelivery date and definite port.

Clause 57.
Cargo claims shall be settled in accordance with the Inter Club New York Produced Exchange Agreement, as amended May, 1984 and any subsequent amendments thereto.

Clause 58.
This Charter is subject to the following clauses:

NEW BOTH TO BLAME COLLISION CLAUSE:
" If the ship comes into collision, with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of this ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the under or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carriers.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contract".



ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASS/LIAS STR., ATHENS 106 80, GREECE

Clause 58 (cont..)
NEW JASON CLAUSE:
" In the event of accident, danger, damage or disaster before or after the
commencement of the voyage, resulting from any cause whatsoever, whether due to
negligence or not, for which, or for the consequence of which, the carrier is not
responsible, by statute, contract or otherwise, the goods, shippers, consignees or
Owners of the goods shall contribute with the carrier in general average to the
payment of any sacrifices, losses or expenses of a general average nature that may be
made or incurred and shall pay salvage and special cargoes incurred in respect of the
goods. If a salving is owned or operated by the carrier, salvage shall be paid for as
fully as if the said salving ship or ships belonged to strangers. Such deposit as the
carrier or his agents may deem sufficient, to cover the estimated contribution of the
goods and any salvage and special charges thereon shall, if required, be made by the
goods, shippers, consignees or owners of the goods to the carrier before delivery.

Clause 59.
The following clauses are to be incorporated in all Bills of Lading issued hereunder:

GENERAL PARAMOUNT CLAUSE:
"This Bill of Lading shall have effect subject to the provisions of any legislation
relating to the carriage of goods by sea which incorporates the rules relating to Bills
of Lading contained in the International Convention, dated Brussels 25th August
1924 and which is compulsory applicable to the contract of carriage herein contained.
Such legislation shall be deemed to be incorporated herein, but nothing herein
contained shall be deemed a surrender by the carrier of any of its rights or immunities
or any increase of any of its responsibilities or liabilities thereunder. If any term of
this Bill of Lading be repugnant to any extent to any legislation by this clause
incorporated, such term shall be void to that extent but no further.

P&I BUNKERING CLAUSE:
The vessel shall have the liberty as part of the contract voyage and at any stage
thereof to proceed to any port or ports whatsoever whether such port are on or off the
direct and/or customary route or routes to the ports of loading or discharging named
in this Charter Party and there take oil bunkers in any quantity in the discretion of
Owners even to the full capacity of fuel tanks, deeptanks and any other compartments
in which oil can be carried whether such amount is or is not required for the chartered
voyage.

Clause 60.
Deleted.



# ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MAISSALIAS STR., ATHENS 106 80, GREECE

Clause 61.

Owners warrant that Owners/Disponent Owners has guidelines on drug and alcohol abuse applicable to the vessel with the object that no seafarer will navigate a ship or operate it's onboard equipment while impaired by drugs or alcohol. And that no seafarer will have the use or possession of, or the opportunity to sell or distribute or transport illicit or non-prescribed drugs aboard the vessel. Further, Charterers expect that Owners/Disponent Owners exercise due diligence throughout the period of Charter Party to ensure that such guidelines are complied with.

Clause 62. Description of vessel (all details "about"):
MV SD Glory

| | |
|---|---|
| Name | : SD Glory Ex Glory Cape |
| Type | : Gearless single decker selftrimming Bulk Carrier |
| Built | : 1987, April |
| Flag | : Greek |
| Summer DWT | : 68,634 metric tons on 13.202 meters |
| LOA/BEAM | : 225.00 meters / 32.20 meters |
| GRT/NRT | : 35,954 / 21,592 |
| Grain capacity | : 2,690,008 cubic feet |

Breakdown per Hold in cubic feet:

| | |
|---|---|
| Hold No.1 | 323,596 |
| Hold No.2 | 395,291 |
| Hold No.3 | 394,383 |
| Hold No.4 | 396,057 |
| Hold No.5 | 400,542 |
| Hold No.6 | 398,981 |
| Hold No.7 | 381,158 |

--------------------

   Total  2,690,008

Hatch Sizes No. 1   : 12.48 meters X 10.92 meters
            Nos. 2-7 : 16.38 meters X 14.04 meters

Australian Hold Ladders : Fitted
TPC: 64.56 metric tons

No Alternative Hold Loading.

Speed and consumption in good weather and smooth sea up to and including Beaufort Scale Force 4/Douglas sea state 3 - no adverse currents - no negative influence of swell

ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 62 (cont..)

Ballast condition about 13.00 knots on about 26.00 metric tons IFO (180 CST) + about 1.0 metric ton MDO

Laden condition about 12.50 knots on about 27 metric tons IFO (180 CST) + about 1.0 metric ton MDO

Port consumption about 1.0 metric ton MDO + about 2.0 metric tons IFO

Bunkers specification : ISO 8217/96 - for IFO : RME 25 with maximum Viscocity 180 CST at 50 Degrees Celcius / for MDO : DMB
Minimum specific energy 40 MJ/KG - CCAI maximum value 850.

When the vessel is in ballast condition and only for ballast exchange
vessel consumes about 6 metric tons MDO according to new regulations.

Vessel burns Distillated MDO when manouvering in/out ports/ canals/ rivers/ straits/ shallow waters or when navigates in restricted waters with or without pilot to master's discretion

- Managers full style: Worldmanagement Inc

Owners warrant that during the currency of this Charter Party
-Vessel shall not change ownership without Charterers' consent
-Vessel's hull and machinery insurance shall be fully maintained and will not be changed
-Vessel not to be sold for scrap after this voyage
-Vessel's P&I Club shall be fully maintained
-Vessel to be ISM certified.
-MILLENIUM CLAUSE
"Year 2000 conformity" shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be dates prior to or during the year 2000.
Without prejudice to their other rights, obligations and defenses under this Charter Party including, where applicable, those of the Hague-Visby Rules, the Owners and Charterers, and in particular the Owners in respect of the vessel, shall exercise due diligence in ensuring year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

Owners have provided fax copies of following certificates:
-Certificate of vessels' registry
-Class Certificate
-P+I Entry Certificate

ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 63. LAW AND ARBITRATION:

This Charter is governed by and construed in accordance with English Law. Any dispute arising under the Charter to be referred to Arbitration in London. One Arbitrator to be nominated by Owners and other to be nominated by Charterers and in case the Arbitrators shall not agree then to the decision of an Umpire to be appointed by them. The award of the Arbitrators or the Umpire to be final and binding upon both parties. The Arbitrators shall be commercial shipping men.

If either of the appointed Arbitrators refuses to act or is incapable of acting, or dies, the party who appointed him may appoint a new Arbitrator in his place.

Clause 64

For 1 time charter trip via safe port(s) safe berth(s)s safe anchorage(s) always afloat always within Institute Warranty Limits via Black Sea excluding Sea of azov   with iron ore/iron ore pellets in bulk only always excluding DRI/DRIP/HBI.   Iron Ore concentrates to be also allowed provided same is loaded in  accordance with IMO, local and international regulations and recommendations including but not limited to Master/Owners being    provided with a certificate showing moisture content of the cargo and info concerning any specific hazards and precautions to be     followed based on the history of carriage of the cargo for redelivery on dropping last outward sea p ilot s afe p ort Singapore-South Japan Range port in Charterers' option at any time day or night, Sundays and Holidays included.

Clause 65
Deleted.

Clause 66
Owners' bank for remittance of hire/bunkers payment:

Hire/bunkers payment to be made in U.S. currency by telegraphic transfer to:
Marfin Bank S.A.
Piraeus Branch
5-7 Filellinon Street
Piraeus - Greece
SWIFT: MARFGRAA
Correspondent: American Express-New York                .
        SWIFT : AEIBUS33

For credit of the account Number: 02 219235 0211 01
IBAN NO: GR76 02 3000 2000 2219 2350 211 01
Of: Star Legend S.A.

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 67
Bunkers on delivery about 1150-1350 metric tons IFO and about 100 metric tons MDO.
Bunkers on redelivery about same as actually on delivery.
Value of bunkers on delivery to be paid together with 1st hire payment.
Same prices both ends USD 310/620 per metric tons IFO/MDO respectively.
Charterers' option to deduct estimated value of bunkers on redelivery from last sufficient hire payment.

Owners have the option to bunker the vessel prior redelivery provided same does not interfere with Charterers' operations.

Charterers to pay value of bunkers on delivery together with first hire payment within 3 banking days after vessel's delivery.

Clause 68 Trading Exclusions
Vessel to trade always between safe berth(s), safe port(s), safe anchorage(s) always safely afloat, always accessible, always within institute warranty limits, always within war risk trading warranty and always excluding war and warlike zones as declared by Owners' war risk underwriters from time to time and also countries which from time to time may be excluded by governing authorities of vessel's flag, excluding ice blocked ports and also excluding:
Alaska, Albania, Algeria, Amazon, Angola (Including Cabinda), Benin, Bosnia-Herzegovina, Cambodia, Cameroon, Canada, CIC Pacific Ports, Cuba, Denmark, Djibouti, Eritrea, Ethiopia, Federal Republic Of Yugoslavia (Serbia & Montenegro), Finland, Gabon, Gambia, Georgia, Ghana, Guinea-Bissau, Gulf Of Aqaba, Haiti, Iran, Iraq, Israel, Ivory Coast, Lebanon, Liberia, Libya (Including Gulf Of Sidra/Sirte), Madagascar, Magellan/Cape Horn, Mauritania, Mozambique, Myanmar, Namibia, Nauru, New Zealand, Nicaragua, Nigeria (And The Bakassi Peninsula), North Korea, Norway, Oman, Orinocco, Persian Or Arabian Gulf Including Gulf Of Oman, Republic Of Congo And Democratic Republic Of Congo (Formerly Zaire), Republic Of Yemen, Sea Of Azov, Senegal, Sierra Leone, Somalia, Sri Lanka, St. Salvador, Sudan, Sweden, Syria, Tasmania, Togo, Tunisia, Turkish Occupied Cyprus, U.S.A., all Arab countries except Egypt and Morocco

St. Lawrence River between 1st December to 30th April to be excluded.
Vessel is not allowed to sail/trade directly between P.R China and Taiwan and Vice versa.
Vessel not to trade straits of Magellan / Cape Horn.

Clause 69-Cargo exclusions:
See Clause 39.

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

Clause 70

One original Bill(s) of Lading retained onboard against which Bill delivery of cargo may properly be made on instructions received from Shippers/Charterers and Receivers.

In case originals Bill(s)of Lading not available prior to vessel's arrival at discharge port, Owners to allow discharge/delivery of the cargo against fax presentation of Charterers' Letter of Indemnity in Owners' wording  signed by Charterers only. Original Letter of Indemnity to be mailed to Owners.

Clause 71

Charterers have the right to supply Ocean Routes or similar advice to the Master during voyage(s) specified by the Charterers. The Master to comply with the reporting procedures of the routing service.

Within the contents of this Charter Party, good weather conditions are understood to mean maximum Beaufort force 4/Douglas Sea State 3, no negative influence of swell, no adverse current. Weather reports to be taken from the vessel's deck log and from Ocean Routes report. In the event of consistent discrepancies between the two sources then another weather bureau to be mutually appointed and their report to be taken as ruling.

Should the vessel's average speed be more than 0.5 knots less than the speed stated in Cl.62 in good weather conditions calculated for the complete voyage and should the average consumption be more than 5 per cent over the consumption stated in Cl.62, Charterers are in liberty to calculate the longer time spent during navigation as well as bunkers consumed in excess, for the purpose of debiting Owners with same. Charterers to submit any claims under this clause not later than 30 (thirty) days from the time of receipt of the voyage sea abstracts.

Clause 72

Prior to delivery of the vessel, Owners to try to provide Charterers with copies of the vessel's capacity plan, hydrostatic curves and deadweight scale, together with copies of the currently approved grain loading and trimming scales.

Clause 73-BIMCO ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel thereafter during the currency of this Charter Party, the Owners shall produce that both the vessel and the "Company" (as defined by ISM Code), shall comply with the requirements of the ISM Code. Upon request, the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.



ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR., ATHENS 105 80, GREECE

Clause 73 (cont..)
Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for the Owners' account.

Clause 74 Ballasting/De-Ballasting
Vessel to ballast/de-ballast clean water ballast tanks only including floodable holds, if required by Charterers or their Agents, at any time during loading and/or discharging free of expense to Charterers but in Charterers' time. All ballasting/de-ballasting shall be at the discretion of Master having due regard to port regulations, stability and seaworthiness of the vessel.

Clause 75
Hire is to include, but not be limited to the following services from the crew:

1) Docking and undocking
2) Shifting and warping the vessel during loading and/or discharging alongside.
3) Bunkering
4) Deleted.
5) Opening and closing of hatches in preparation for and during loading and/or discharging operations or due to the onset of adverse weather conditions likely to affect the condition of the cargo on board or being loaded and/or discharged.
6) Deleted.
7) Maintaining sufficient steam/power for all cranes/lights while loading and/or discharging and caring for same throughout such operations.
8) Supervision of loading and/or discharging and issuing and signing usual stowage plans and Mate's receipts.
9) Attending the vessel's hatches during sea passage to ensure they remain water-right at all times.

It is understood that certain of the above services may be prohibited by shore labour regulations once in port, in which case the Master will comply with such regulations but will use his best endeavours to perform some of the services at sea whenever possible prior to arrival. If any of the above services are not permitted by local regulations to be carried out by crew then shore labours to be employed by Charterers and same to be for their time and expense.

ORIGINAL

CHARTERING CORPORATION S.A.
KAPLANON 7 & MASSALIAS STR., ATHENS 106 80, GREECE

*Clause 76 Oil Pollution*

a) If the Owners are required to establish or Maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawful to enter, remain in or leave any port, place territorial or contiguous waters or exclusive economic zone of any country or state in performance of this Charter Party, the Owners shall make all arrangements by bond or otherwise may be necessitated to satisfy such requirements at Owners' sole expense.

b) The Charterers shall be under no responsibility for all consequences (including loss of time) of oil or other pollution damage and any failure or inability of the Owners to do so as provided for the above and any loss of time incurred there by shall be off-hire, unless the same shall be due to the default of Charterers.

c) The Owners shall indemnify and hold the Charterers harmless against all consequences (including fines if any imposed to the Charterers ) of oil or other pollution damage unless due to Charterers and any failure or inability of the Owners to do so as provided for in the preceding paragraph (a).

In connection with the preceding paragraph (a), a particular reference is made to a certificate of Financial Responsibility in compliance with requirements of the U.S. Federal Water Pollution Act as amended, the Oil Pollution Act of 1990. The Comprehensive Environmental response Compensation and Liability Act as amended, and any amendment thereto.

d) The Owners warrant that the Vessel is entered with the protection and indemnity insurer listed in this Charter Party for the full coverage available for marine pollution risks. In the event the Owners fail to undertake such measures, the Charterers may, at their option, upon notice to the Owners or the Master, do so themselves and any measures taken by the Charterers shall be deemed taken on the Owners' authority and as the Owner's agent, and shall be at Owner's expense except to the extent that any such pollution damage or threat was caused or contributed to be the Charterers.

The Owners to be responsible for and to comply with local regulations.


Clause 77 Mobile Crane Clause

Charterers to have the liberty to place mobile cranes on deck to facilitate loading or discharge where same is customary at intended port, subject to the owners satisfaction on mobile crane specifications and vessel's class society's approval of same. All costs and time to be for charterers' account and sufficient dunnage (if required) to be placed underneath the cranes to spread the weight and in any case not to exceed permissible weight per square meter on deck. Should any cutting, welding or r einforcement b e necessary o n vessel's h atches to a ccomodate the p lacement o f such cranes, then expenses and time of such work to be for charterers' account and such work always to be carried out subject to vessel's classification society surveyor's approval.

ORIGINAL



*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR , ATHENS 106 80, GREECE

Clause 77 (cont..)
Charterers will be fully responsible for any damages, time, expenses and surveyor's cost (including b ut n ot l imited to all b urnt area o f paints o n d eck and u nderneath which to be reconditioned to original state) and that all operations to be under master's/ officer's supervision and to vessel's classification society surveyor's and master's satisfaction. In case of damage, same to be repaired prior to sailing of the vessel from the respective port.

It is further explicitly agreed that, by owners allowing charterers to perform above operation, charterers/ stevedores will jointly and severally fully indemnify owners from any responsibility or liability in relation to claims of whatsoever nature from third parties or their agents and servants (including but not limited to workers/ stevedores/ crane drivers etc).

Clause 78
Trading to ports that are excluded due to them being considered as war/war-risk areas by Owners Hull and Machinery underwriters is prohibited, however in the event that such areas have been specifically allowed by Owners in the trading exclusions clause then Charterers are to reimburse Owners with any additional war risk insurance premiums charged by their Hull and Machinery underwriters (including blocking and trapping). Furthermore Charterers will also reimburse Owners for any crew war bonuses paid according to agreement between the Owners and the crew.

Clause 79 Bunkering Clause
The Charterers shall supply bunkers of the specifications and grades stated in vessel description.    The Charterers warrant that the bunkers shall be of a stable and homogeneous nature fit for use by the vessel and unless otherwise agreed in writing, shall comply with ISO Standard 8217-1996 or any subsequent amendments thereof as well as with the relevant provisions of Marpol. The Chief Engineer shall co-operate with the Charterers' bunkering agents and bunkers suppliers and comply with their requirements during bunkering, including but not limited to checking, verifying and acknowledging sampling, readings or soundings, meters etc, before during and/or after delivery of bunkers. During delivery four representative samples of all bunkers shall be taken at a point as close as possible to the vessel's bunker manifold. The samples shall be labelled and sealed and signed by suppliers, Chief Engineer and the Charterers or their agents. Two samples shall be retained by the owners for minimum 60 days a fter delivery o f t he bunkers t o t he vessel o r a s l ong a s t he O wners m ay reasonably require and one each by the suppliers and the Charterers. If any claim should arise in respect of the quality or specification or grades of the bunkers supplied, the samples of the bunkers retained as aforesaid shall be analysed by a mutually agreed qualified and independent laboratory, whose findings will be binding between Owners and Charterers.

 ORIGINAL

*CHARTERING CORPORATION S.A.*
KAPLANON 7 & MASSALIAS STR , ATHENS 106 80, GREECE

Clause 79 (cont..)
The Charterers shall be liable for any loss or damage to the Owners and/or for any damage to the main engines or the auxiliaries caused by the supply of unsuitable fuels or fuels which do not comply with the specifications and grades set out in vessel's description and the Owners shall not be held liable for any reduction in the vessel's' speed performance and/or increased bunker consumption nor for any time lost and any other consequences arising as a result of such supply.

Clause 80
No through transhipment or combined transport Bill(s) of Lading and no Way Bills or Liner Bills or Bills of Lading containing liner terms are to be issued under this Charter Party. Charterers are to ensure that all Bills of Lading issued and/or signed by themselves or their agents or any other party on their behalf covering cargo loaded under this charter are in strict conformity with the mate's receipts signed by Master or chief officer of the vessel and includes all clauses or remarks contained therein.

Clause 81 Hamburg Rules Clause
Neither the Charterers nor their agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any Sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules.
The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this Clause.

Clause 82
Charterers are to leave the vessel in safe and seaworthy trim and with cargo on board safely stowed /trimmed to the Master's satisfaction for all shiftings between berths and all passages between ports under this charter in their time and at their expense.

THE OWNERS                    THE CHARTERERS