**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

### CLAUSE 48

The vessel shall be suitable for normal size grab discharge, the Charterers shall have the liberty to use bulldozers in the vessel's holds at their time, risk and expense provided weight does not exceed tank top strengths. Any damages caused by bulldozers working in the vessel's holds to be considered as stevedore damage (reference Clause 53). Owners not to be responsible for injuries or accidents employed in operating said equipment.

### CLAUSE 49

Should the vessel and /or her Master and / or her Officers and crew and / or any person travelling on board the vessel be arrested during the currency of this Charter Party at the suit of any person having or purporting to have a legitimate claim against or any interest in the vessel and / or said Master and / or Officers and crew and / or person travelling on board vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as the result of such arrest or is delayed in any way due to detention or restraint of Master, Officers or crew etc., provided such arrest hinders normal operation of vessel and the Owners shall reimburse to the Charterers for any expenditure which they may incur under this Charter Party and vessel to be off hire for any time actually lost. Owners shall also remain liable to Charterers for any and all costs incurred by Charterers sustained by Charterers, which may arise from such arrest of vessel and / or individuals.
The provisions of this clause not to apply if such arrest or detention is caused by default error or omission of Charterers, Stevedores or other persons being on board under the auspices of the Charterers or if related to the cargo being carried.

### CLAUSE 50

In the absence of original Bills of Lading at discharge ports, Owners / Master to allow cargo discharge/release against Charterers Letter of indemnity only, in owners standard P and I club wording but without bank endorsement/guarantee. Original L.O.I. to be mailed to Owners.
Letter of indemnity to be signed by an authorised officer of the Charterers.

### CLAUSE 51

 Master to cable or telex 'NOCHAR HONG KONG' telex number (Hong Kong 70486 NCHAR HX), on sailing from each port, advising bunkers on board and estimated time of arrival at next port of call. The Master cable or telex 'NOCHAR HONG KONG' telex number (Hong Kong) 70486 NCHAR HX, every day giving vessel's position, average speed and consumption, bunkers and fresh water remaining on board at noon and estimated time of arrival at next port of call. Cable expenses for Charterers' account.

### CLAUSE 52

Notwithstanding anything that may be contained in this charter to the contrary. It is expressly agreed that the Owners shall remain responsible for and indemnify Charterers against all claims arising in connection with loss of life, personal injury or similar claims for which they are proven to be liable, unless those claims due to Charterers' or their servants' actions. The Owners further guarantee to maintain a fully Shipowners' P and I entry for the duration of this Charter.

ORIGINAL

Ace Chartering S.A.

Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007

**CLAUSE 53**

Charterers shall not, in any event, be liable for claims in connection with Stevedores damage or damage caused by bulldozer suffered by the vessel and /or her equipment unless:

a) Master advises Charterers or their agents in writing or by cable within 24 hours of occurrence of any damage for which the Master considers Charterers liable so that Charterers may claim against Stevedores or parties responsible, always provided that such damage is detected as stated above, otherwise when same is actually detected, but in any event prior to vessel's redelivery.

b) Such damage shall have been entered in vessel's Log Books and

c) Master shall also have endeavoured to hold Stevedores or parties responsible for damage liable in writing or by cable with copy to Charterers.

If extent of damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with (a), (b) and (c) above and details may follow when examination possible, if, at time of redelivery, there remains outstanding limited damage for which Charterers may be liable, but which, without affecting the seaworthiness classification, or operating ability of the vessel, can be repaired by Owners at any convenient time after redelivery, Owners undertake to accept redelivery under Clause 4 of this Charter Party. If redelivery accepted as above, Charterers undertake to reimburse Owners cost of repairs as ascertained later by mutually agreed surveyor, when repairs carried out and liability established and any additional time used at charter hire rate. This refers only to the case where the stevedore damage cannot be repaired concurrently with owners' works and vessel delays additionally solely due to outstanding stevedore damage repairs.
It is always understood that any such damage affecting vessel's seaworthiness classification, or operating ability will be repaired at place of occurrence as far as possible and facilities exist for permanent repairs, otherwise temporary repairs to be done on the spot or as when detected at Charterers' time and expenses and to class surveyor's satisfaction. Vessel always remaining on hire.

**CLAUSE 54**
**BIMCO DOUBLE BANKING CLAUSE**

- Double Banking Clause
    A) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

    B) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operation mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

    C) Without prejudice to the generality of the Charterers' rights under (a) and (b) it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provide in  (a) and (b) if in his reasonable opinion it is not safe to do so.

    D) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

    E) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.



Ace Chartering S.A.

### Additional Clauses to M.V. "SD Glory"
### Charter Party dated 25th April 2007

## CLAUSE 55

Conwartime 1993, New Jason Clause, New Both-to-Blame Collision Clause, BIMCO ISPS clause as attached to be considered part of this Charter Party and to be included in all Bills of Lading issued hereunder. Clause Paramount incorporating Hague Rules to be included in Bills of Lading.

## CLAUSE 56

Premium for Basic War Risk insurance to be for Owners' account, but any increase due to vessel's entering in war zone or restricted areas, including crew war bonus concerning normal war risk, to be for Charterers' account, but if Owners had not covered Basic War Risk insurance, Time Charterers only to pay the differential of the amount, as if they had done so. The additional premium is to be payable on hull and machinery based on the amount of USD 16,5 million subject always to mean London market rates and discount at time of placement.

## CLAUSE 57



Notwithstanding anything contained herein to the contrary, Owners and Charterers expressly agree that they will apportion liability for cargo claim on the basis of the Inter P and I Club New York Produce Exchange Agreement and either contribute settlement funds or indemnify each other accordingly. Vessel is entered on behalf of Owners with 'The London Steamship' P and I Club.

## CLAUSE 58

Charterers to have the right to pay a lumpsum of USD 5,000, in lieu of hold cleaning for final redelivery. In the event of this right being exercised, Owners to instruct Master to accept redelivery of vessel with unclean holds and Charterers to relieved of all further liability and expenses in this respect.

## CLAUSE 59
## CARGO EXCLUSIONS

Grain/grain products in bulk only excluding any grain/grain products that fall under Appendix B of IMO BC Code. All other cargoes excluded.

## CLAUSE 60



Charterers option to appoint WNI Oceanroutes or Applied Weather Technology, USA. both being independent routing companies to the master during the voyage specified by the Charterers. The master is to comply with the reporting procedure of this weather service. The vessel shall be capable, at all times during the currency of this charter party, of steaming at about (charter party speed) knots. For the purpose of this charter party, good weather conditions are to be defined as wind speeds not exceeding Beaufort force 4 no adverse currents, no negative influence of swell and Douglas sea state 3. In the event of a dispute over the apparent breach of the speed and consumption warranty in this charter party, the performance data/evaluation supplied by another mutually appointed weather routing company shall be taken as binding on both parties. The master is also to follow the recommendations in regard to optimum course(s) at all times subject to the safety of the vessel. If the master elects not to follow the weather routing company's recommendations, both Charterers and weather routing company to be advised as soon as practical advising the reasons for non-compliance. the weather routing company summary report will be taken into account in any off-hire claim resulting from the vessel's speed and/or fuel consumption discrepancy, and also for non-compliance with the recommended routes, except when there is concern for the vessel's safety.
If both parties cannot agree on weather routing co and fail to reach an amicable solution on an underperformance claim, the matter to be referred to arbitration.



Ace Chartering S.A.

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25ᵗʰ April 2007**

## CLAUSE 61

Vessel to be left in a seaworthy trim to Master's satisfaction to shift between loading and / or discharging port(s)/ berth (s)/place(s) at Charterers' expense.

## CLAUSE 62

With reference to clause 5 of this Charter Party, it is understood that in the event that the vessel is expected to be redelivered to Owners prior to the expire of the 15 days period that would be covered by the next payment of hire, Charterers shall be entitled to effect payment of hire on the basis of that estimated to complete the service, but Charterers to pay promptly any additional hire due if expectations prove inaccurate.

## CLAUSE 63

Should the vessel be requisitioned, seized or detained by any Government or Government body (whether or not legally constituted), or as the result of any action by any such Government or Government body, during the period of this Charter Party, vessel shall be off hire hereunder, during the period of such requisition, seizure or detention and any hire or other compensation paid in respect of such requisition shall be for Owners' account. Charterers shall, however, have the right to terminate this Charter Party at any time, without incurring any liability whatsoever, in the event of one of the aforementioned contingencies arising, provided there is no cargo on board, but always provided that any such detention or seizure is not caused by Charterers, or their servants' or agents' default, error or omission and also provided that such detention exceeds 15 running days. Charterers to give Owners at least 48 hours notice of their intention to cancel .

## CLAUSE 64
**VESSEL'S DESCRIPTION (All details about)**

MV SD GLORY
------------
"ALL DETAILS ABOUT"

```
NAME            : SD GLORY EX GLORY CAPE
TYPE            : GEARLESS S/D S/T BULK CARRIER
BUILT           : 1987, APRIL
FLAG            : GREEK
SUMMER DWT      : 68,634 MT ON 13.202 M
LOA/BEAM        : 225.00 M / 32.20 M
GRT/NRT         : 35,954 / 21,592
GRAIN CAPACITY  : 2,690,008 CBFT

BREAKDOWN PER HOLD IN CUBIC FEET:
HOLD NO.1   323,596
HOLD NO.2   395,291
HOLD NO.3   394,383
HOLD NO.4   396,057
HOLD NO.5   400,542
HOLD NO.6   398,981
HOLD NO.7   381,158
--------------------
  TOTAL  2,690,008

HATCH SIZES NO. 1   : 12.48 M X 10.92 M
          NOS. 2-7 : 16.38 M X 14.04 M
```

ORIGINAL

**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

AUSTRALIAN HOLD LADDERS : FITTED
TPC: 64.56 MT

NO ALTERNATIVE HOLD LOADING.

SPEED AND CONSUMPTION IN GOOD WEATHER AND SMOOTH SEA UP TO AND
INCLUDING BEAUFORT SCALE FORCE 4/DOUGLAS SEA STATE 3 - NO ADVERSE
CURRENTS - NO NEGATIVE INFLUENCE OF SWELL

BALLAST CONDITION ABT 13.00 K ON ABT 26.00 MT IFO (180 CST) + ABT 2.0 MT MDO
LADEN CONDITION ABT 12.50 K ON ABT 27 MT IFO (180 CST) + ABT 2.0 MT MDO
PORT CONSUMPTION ABT 2.5 MT MDO DAILY

BUNKERS SPECIFICATION : ISO 8217/2005 - FOR IFO : RME 180 WITH
MAX VISCOCITY 180 CST AT 50 DEGREES CELCIUS / FOR MDO : DMB
MINIMUM SPECIFIC ENERGY 40 MJ/KG - CCAI MAX VALUE 850

WHEN THE VESSEL IS IN BALLAST CONDITION AND ONLY FOR BALLAST EXCHANGE
VESSEL CONSUMES ABT 6 MT MDO ACCORDING TO NEW REGULATIONS.

VSL BURNS DISTILLATED MDO WHEN MANOUVERING IN/OUT
PORTS/CANALS/RIVERS/STRAITS/SHALLOW WATERS OR WHEN NAVIGATES IN
RESTRICTED WATERS WITH OR WITHOUT PILOT TO MASTER'S DISCRETION
+

CHRTRS' QNAIRE :
===========

1) OWNERS/DIS OWNERS FULL STYLE: SEA MASTER LEGEND S.A., PANAMA
2) MANAGER'S FULL STYLE:
   WORLD MANAGEMENT INC
   65-67 DRAGATSANIOU STR
   PIRAEUS 185 45
   PHONE: +30 210 406 1198
   FAX: +30 210 406 1098
   TLX: +60 211163
   E-MAIL: WM@WORLDMANAGEMENT.GR
3) VSL'S PNI CLUB: THE LONDON STEAMSHIP
4) VSL'S HNM VALUE:
   TOTAL INSURED VALUE - US $ 18.500.000
5) VSL'S FO/DO/FW TANK CAPACITIES:
   100% FULL IFO 2900 M/T
   D.O. 260 M/T
   F.W. 400 M/T
6) VSL'S ITINERARY AND LAST 3 CARGOES:
   ITINENARY - VSL IS PRESENTLY AT NANTONG SHIPYARD FOR
   S/SURVEY - D/DOCK ETS AROUND 3-5TH MAY 2007 AGW/WP/UCAE
   LAST THREE CARGOES FROM LAST: SOYA BEANS - SOYA BEANS - CLINKER
7) VSL'S CLASS. OWNERS CONFIRM VSL FULLY CLASSED AND WILL
   REMAIN SO CLASSED DURING THE PERIOD OF CHARTER. - CONFIRM - N.K.K
8) VSL STRENGTHENED FOR HEAVY CARGO AND CLASSED FOR ALTERNATE HOLD
   LOADING: NO
9) VSL'S CONSTANT AND TPC/TPI: 400 M/T / 64.56 M/T / 163.9 M/T

ORIGINAL

**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007**

10) VSL'S DWAT AND TPC ON 11.8M/12/12.5M SSW:
    11.8 - 59646 M/T - 63.53 M/T
    12.0 - 60920 M/T - 63.68 M/T
    12.5 - 64115 M/T - 64.07 M/T
11) VSL'S WLTHC IN LIGHT/HEAVY BALLAST CONDITION OR
    VSL'S WLTHC IN BALLASTED/FULLY LADEN CONDITION:
    LIGHT BALLAST 14.56 M / HEAVY BALLAST 13.00 M
    BALLASTED 13.0 M - LADEN 7.5 MTR
12) NATIONALITY OF OFFICERS AND CREW:
    GREEK - PHILIPPINO - PHILIPPINO
13) VSL'S HATCH SIZE:
    No 1/12.48 X 10.92 - 2/7 - 16.38 x 14.04 M
14) VSL'S GRAIN CAPACITY B/D BY HOLD:
    No 1 - 323596 c/f
    No 2 - 395291 C/F
    No 3 - 394383 C/F
    No 4 - 396057 C/F
    No 5 - 400546 C/F
    No 6 - 398091 C/F
    No 7 - 381158 C/F
    TOTAL 2690008 C/F
15) VSL SUITABLE FOR GRAB DISCHARGE: YES
16) VSL'S DEBALLASTING TIME: ABOUT 22 HRS
17) VSL'S GRT/NRT: 35954 / 21591
18) VSL'S MAX/ALTERNATE SPEED/CONS: AS GIVEN
19) VSL'S INMARSAT/TLX NO.:
    PHONE: 764053576
    FAX: 764053578
    PHONE: 600423989
    FAX: 600423983
    TLX: 423958110
    E-MAIL: SDGLORY@HERMES.OTESAT-MARITEL.NET
20) OWNS CONFIRM VSL CAN MAINTAIN MAX 13M WLTHC THOROUGHT LOADING
    BASIS ONE LOADING ARM - CONFIRM
21) OWNERS CONFIRM THAT IF LOADING MADRAS VSL'S ARRIVAL DRAFT AT
    LOAD PORT WILL BE MIN 19FT FORE AND 24FT AFT - N/A
22) PLEASE CONFIRM OWNERS' HAVE A VALID SMC/DOC/ISSC :
    PLEASE FAX COPIES OF SAME. - CONFIRM - ATTACHED HEREWITH
23) PLEASE ADVISE CSO AND SSO DETAILS :
    CSO: MANOLIS KALIKIS PHONE: +30 210 406 1198
    SSO: CAPTAIN TSIVIKAS STYLIANOS PHONE: 764053576
24) PLEASE ADVISE HEAD-OWNER'S FULL STYLE AND ADDRESS :
    ~~STAR LEGEND S.A., PANAMA~~ → SEA MASTER LEGEND S.A., PANAMA
24) PLEASE ADVISE LAST 10 PORTS OF CALL :
    NANTONG - XINSHA - KALANNA - YOSU - DALIAN -
    CUSTABAL/BALLOA - NEW ORLEANS - GIBRALTAR -
    CARTAGENA - SUEZ/PORTSAID.
+

## CLAUSE 65

Vessel uses marine diesel oil in engines when navigating in ports, narrow sea, rivers and canals.



**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

### CLAUSE 66

Watchmen for cargo and compulsory watchmen and garbage removal to be for Charterers' account.

### CLAUSE 67

No radioactive material to be loaded.

### CLAUSE 68

Victualling / entertainment / communications USD 1,250.00 per month or pro rata.

### CLAUSE 69

Hire shall not be due for any time lost by reason of any boycott or any blacklisting or any threat to boycott or blacklist of the vessel or vessel being rendered inoperative by strikes, labour stoppages or any other difficulties arising from the vessel's flag, nationality of her registry, her ownership or management, the nationality of any member of her crew or the terms on which the crew are engaged or any other vessel under the same ownership, management or control and owners shall remain responsible for all directly related costs that may be incurred by Charterers. Owners further guarantee, however, that the minimum terms and conditions on which the crew are engaged are now, or will be prior to the presentation of the vessel for delivery, covered by a bona fide trade union agreement acceptable to the I.T.F. and their local offices.
If the vessel does not meet these requirements at any time during the currency of the charter, the vessel is to go off-hire from time of such failure until such requirements are fully complied with, and any direct costs involved, including shore labour stand-by time but maximum one shift, to be for owners account.

### CLAUSE 70

If war breaks out between any of the following countries, both parties may cancel the Charter Party: USA, Russia, China, Australia, Greece, UK, Japan and India.

### CLAUSE 71

Charterers to advise Owners at all times of vessels itinerary and full name, address, telex and telephone numbers of Charterers' agents at all ports of call.

### CLAUSE 72

If vessel detained or denied loading on account of vessel and / or crew and / or crew employment contracts not meeting the ITF/WWF requirement then all such delays and resulting expenses to be for Owners' account but always excluding consequential damages.

### CLAUSE 73

Owners are to fax Charterers a copy of vessel's latest international loadline certificate, latest/valid safety construction certificate, vessel's ITF or equivalent certificate, vessel's class certificate and S.M.C, D.O.C and I.S.S.C. upon fixing main terms.

### CLAUSE 74

Charterers always to appoint qualified / certified stevedores/bulldozer drivers.



Ace Chartering S.A.

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

### CLAUSE 75

Only bulk cargo to be loaded.

### CLAUSE 76

Bills of Lading to state subject to English Law and Arbitration in London.

### CLAUSE 77

The vessel shall not be required to trade to any port or carry any cargo and the Master shall not be required to sign any Bills of Lading which will result in the vessel and / or Owner which is subject to US Laws being violated of US laws or regulations.

### CLAUSE 78



Owners warrant that the vessel is fitted with Australian hold ladders in accordance with WWF requirements or any amendments thereto, and will remain so throughout the currency of this Charter Party.
Vessel is also fitted with pilot ladders in accordance with the Australian regulations.

### CLAUSE 79
### TRADING EXCLUSIONS

Vessel to trade always between safe berth(s), safe port(s), safe anchorage(s) always safely afloat, always accessible, always within institute warranty limits, always within war risk trading warranty and always excluding war and warlike   zones as declared by owners' war risk underwriters from time to time and also countries which from time to time may be excluded by governing authorities of vessel's flag, excluding ice blocked ports and also excluding:
Alaska, Albania, Algeria, Amazon, Angola including Cabinda, Benin, Bosnia-Herzegovina, Cambodia, Cameroon, Cape Cuvier in Australia, CIS pacific ports and other ports affected by Asian gypsy moth as listed from time to time by 'APHIS' of the US dept. of agriculture and/or the Canadian food inspection agency, Cuba, Djibouti, Eritrea, Ethiopia, Federal Republic of Yugoslavia (Serbia / Montenegro), Finland , Gabon, Gambia, Georgia, Ghana, Guinea-Bissau, Gulf of Aqaba allowed but with Owners' prior approval which not to be unreasonably withheld, Haiti, Iran, Iraq, Israel, Ivory coast, Lebanon, Liberia, Libya (including gulf of Sidra/Sirte), Madagascar, Magellan/Cape Horn, Mauritania, Mozambique, Myanmar, Namibia, Nauru, New Zealand, Nicaragua, Nigeria (and the Bakassi peninsula), North Korea, Norway, Oman, Orinoco , Republic of Congo and Democratic Republic of Congo (formerly Zaire), Republic of Yemen , Sea of Azov, Senegal, Sierra Leone, Somalia, Sri Lanka , St. Salvador, Sudan, Sweden, Syria, Tasmania, Togo, Turkish occupied Cyprus.
All ports within state of California in USA are to be excluded
St. Lawrence river between 1st December to 30th April to be excluded.
Vessel is not allowed to sail/trade directly between People's Republic of China and Taiwan and vice versa.
Vessel not to trade straits of Magellan / Cape Horn.

### CLAUSE 80

Owners warrant to have secured and carry on board a certificate of financial responsibility as required under U.S. Law Public Law 92-500, the Federal Water Pollution Control Act of 1972 as amended (U.S. Code 46-C-FR-542).

### CLAUSE 81

Owners' guarantee that the vessel has not trade to/from any CIS/Ex-Russian Pacific ports within the last 12 months. Furthermore, the Owners guarantee that the vessel on delivery meets all Agricultural Canada Plant Protection Division and USDA Plant Protection and Quarantine Office Regulations concerning the Asian Gypsy

ORIGINAL

**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

Moth. Furthermore, Owners guarantee that the vessel is free of any Asian Gypsy Moth Eggs or Larvae or any form of Asian Gypsy Moth life. Should the vessel be found to have same, vessel to be considered off hire until the vessel has been passed /cleared by Canadian/ U.S. authorities. All costs, consequences, losses, damages including but not limited to loss of sale/purchase to be for Owners account.

## CLAUSE 82

Any dispute arising out of or in connection with this Charter Party shall be governed by English Law and referred to arbitration in London (in accordance with L.M.A.A. rules in force at the time of commencement of arbitration.) One arbitrator to be nominated by the Owners and the other by the Charterers, and in case those arbitrators shall not agree then to the decision of Umpire to be appointed by them. The award of the arbitrators or the Umpire to be final and binding on both parties.
If either of the appointed arbitrators refuses to act, or dies the party who appointed him may appoint a new arbitrator in his place. If one party fails to appoint an arbitrator either originally or by way of substitution as, aforesaid within seven clear days after the other party having appointed its arbitrator, the party who has appointed an arbitrator to act as sole arbitrator in the reference, and his award be binding on both parties as if he had been appointed by consent, English Law to apply, Arbitrator to be member of the L.M.A.A..



## CLAUSE 83

The vessel shall trade to areas to the extent permitted by U.S. authorities. The vessel shall not be required to trade to any port or carry any cargo and the Master shall not be required to sign any Bills of Lading, which will result in the vessel and or the Owners being in violation of U.S. Law or US regulations.

## CLAUSE 84
## BIMCO ISM CLAUSE

From the date of coming into force of The International Safety of Management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and 'the Company' (as defined by ISM Code) shall comply with the requirements of the ISM Code.

Upon request, the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Expect as otherwise provided in this Charter Party, loss, damage, expenses or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM Code shall be for the Owners' account.



## CLAUSE 85

1)   Neither the Charterers nor their agents shall permit the issue of any Bills of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or of the Charterers' behalf or on behalf of any sub-Charterers) incorporating where not compulsorily applicable the Hamburg rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague/Visby Rules.

   The Charterers shall indemnify the Owners against any liability, including legal costs, loss or damage which may result from any breach of the foregoing provisions of this clause.

2)   The Charterers undertake that during the period of this Charter Party they will not procure any port expenses and bunkers on the credit of the Owners or in Owners' name, and if requested, will provide evidence thereof to the Owners.

3)   All taxes and dues on sub-hires earned under this Charter Party and/or sub freight/deadfreights and/or cargo to be for Charterers' account excluding taxes levied by the country of the flag of the vessel on the Owners.



**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

4)  Deleted

5)  In case of Charterers supply bunkers the vessel, Charterers to advise name of suppliers, place of bunkering however Owners will not accept Misr Petroleum in Egypt as bunker suppliers.

## CLAUSE 86

Owners warrant that the vessel fully complies with the requirements of SOLAS 1974 and any amendments thereto including chapter XI-2. Any costs, expenses and loss of time as a result of non-compliance with these requirements is to be entirely for Owners account.

## CLAUSE 87
### BIMCO 'Y2K' CLAUSE



"Year 2000 conformity" shall mean that neither performance nor functionality of computer systems, electronic or electro-mechanical or similar equipment will be affected by dates prior to or during the year 2000.

Without prejudice to their other rights, obligations and defences under this Charter Party including, where applicable, those of the Hague or Hague-Visby Rules, the Owners and the Charterers, and in particular the Owners in respect of the vessel shall exercise due diligence in ensuring year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

## CLAUSE 88

Owners warrant that vessel complies with Suez canal authority rules article 20 section 7 which states that: Ships must be fitted with well maintained lifting appliances capable of lifting mooring boats of 4 tons weight (including crew members).

## CLAUSE 89



Deleted.

## CLAUSE 90

Owners warrant that vessel is eligible and equipped to bunker in the U.S.A., its territories and possessions and in all countries to which vessel is allowed to trade under this Charter.

## CLAUSE 91

Owners confirm vessel is suitable in every respect for the carriage of bulk grains with all holds self-trimming including all grain loading and stability booklets on board for holds filled with untrimmed ends. Vessel to have on board throughout this charter period valid documents and certificates issued by their classification society and/or National Authority and accepted by U.S.D.A./N.C.B. Ministry of Transport on the basis of the SOLAS 1974 regulations and any latest amendments thereto.

ORIGINAL

Ace Chartering S.A.

Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007

**CLAUSE 92**
**BUNKERING CLAUSE**

1. The Charterers shall supply bunkers of the specifications and grades stated ~~n vessel~~ `in vessel's` description. The Charterers warrant that the bunkers shall be of a table and homogeneous nature fit for use by the vessel and unless otherwise agreed in writing, shall comply with ISO standard 8217-2005 or any subsequent amendments thereof as well as with the relevant provisions of MARPOL.

2. During the currency of the charter the Charterers shall ensure that bunker delivery notes are presented to the vessel on the delivery of the fuel(s). During delivery five representative samples of all bunkers shall be taken at a point as close as possible to the vessel's bunker manifold. the samples shall be labelled and sealed and signed by suppliers, chief engineer and the Charterers or their agents.  one sample shall be given to the Charterers' representative, one to the suppliers, two samples (including the MAROL sample) shall be retained on board the vessel and the fifth sample shall be sent to a reputable lab for analysis.


3. Any dispute  in respect of the quality or specification or grades of the bunkers supplied, shall be settled by analysis of one of the labelled and sealed samples out of above 5 sample retained by the Owners by a recognised and mutually ~~acceptable~~ laboratory, whose findings will be conclusive evidence as to conformity or otherwise of the bunkers|fuels to the required specification and  shall be binding as  between Owners and Charterers.  `agreed`

4. The Charterers  shall be liable for all losses, damages and expenses directly arising out of the loading of off specification fuel bunkers. The Owners shall not be held liable for any reduction in the vessel's speed, performance and/or increased bunker consumption nor for any time lost arising as a result of such supply.

5. Off specification bunkers unfit for use in the main engine as per qualified fuel oil testing laboratory recommendation shall be entitled to be pumped ashore at first opportunity convenient to the owners at Charterer's cost and with no time lost for owners.

6. The Charterers acknowledge that the owners cannot verify the source of any bunker sample provided by the bunker suppliers, which sample is in any event not a representative sample under this charter party. The owners have no liability to the Charterers whatsoever in relation to the sample(s) provided by the bunker suppliers and have no obligation to witness such samples being taken. ~~this~~ clause takes precedence over the voyage instructions or any other instructions of the Charterers in respect of samples from the bunker suppliers. `This`

**CLAUSE 93**
**CONCENTRATE LOADING CLAUSE**

Deleted.

**CLAUSE 94**
**PETCOKE PROTECTIVE CLAUSE**

Deleted.

**CLAUSE 95**
**INTERMEDIATE HOLD CLEANING**

Deleted.



**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25th April 2007**

**CLAUSE 96**
**BIMCO BUNKER FUEL SULPHUR CONTENT CLAUSE 2005 FOR TIME CHARTER PARTIES**

(a) Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

 (i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and

(ii) the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

**CONWARTIME 1993**

1.For the purpose of this clause, the words:

 (a) 'Owners' shall include the Shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master; and

(b) ' War Risks' shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the government of any state whatsoever, which, in the reasonable judgement of the Master and / or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2. The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered or be required to continue to or through any port, place, area or zone (whether or land or sea) except Jordan/Red sea, or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons and /or the Vessel, in the reasonable judgement of the Master and / or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.



Ace Chartering S.A.

**Additional Clauses to M.V. "SD Glory"**
**Charter Party dated 25ᵗʰ April 2007**

3. The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and / or confiscation.

4.
    (a) The Owners may effect war risks insurance in respect of Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/ or calls therefore shall be for their account.
    (b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/ or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5. If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6. The vessel shall have liberty:
    (a) To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever which are given by the government of the Nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;
    (b) To comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance.
    (c) To comply with the terms of any resolution of the security Council of the United Nations, any directives of the European community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, ant to obey the orders and directions of those who are charged with their enforcement.
    (d) To divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;
    (e) To divert and call at any other port to change the crew or any part thereof or other persons on board the vessel where there is reason to believe that may be subject to internment, imprisonment or other sanctions.

7. If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8. If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation but shall be considered as due fulfilment of this Charter Party.

9. This clause is always subject to the "Red Sea Liberty Clause", as agreed in clause 47.



Ace Chartering S.A.

Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007

## GENERAL AVERAGE AND THE NEW JASON CLAUSE

The General Average shall be payable according to the York/Antwerp Rules and any amendments thereto 1974 and any subsequent amendments thereto but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the carrier is not responsible by statute or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## I NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply:

## NEW BOTH TO BLAME COLLISSION CLAUSE

'If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.'

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.



Ace Chartering S.A.

Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007

## BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

(a) (i) From the date of coming into force of the International Code for the Security of Ships and   of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners  shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company".  Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/ Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:
"The Charterers shall provide the Owners with their full style contact details and, where Sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment, which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## U.S TAX REFORM 1986 CLAUSE

Any U.S. gross transportation tax as enacted by the United States public law 99-514, (also referred to as the U.S. tax reform act of 1986), including later changes or amendments, levied on income attributable to transportation under this Charter Party, which begins or ends in the United States, and which income under the laws of the United States is treated as U.S. source transportation gross income, shall be reimbursed by the Charterers.

## U.S. SECURITY CLAUSE FOR TIME CHARTERING

If the vessel calls in the United States, including any U.S. territory, the following provisions shall apply with respect to any applicable security regulations or measures:
Notwithstanding anything else contained in this charter party all costs or expenses arising out of or related to security regulations or measures required by any U.S. authority including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence.



Ace Chartering S.A.

## Additional Clauses to M.V. "SD Glory" Charter Party dated 25th April 2007

However in the event that master/owners are not given sufficient advance notice of charterer's next employment details or in the event that Charterers change the vessel's employment instructions already given then if such new employment details involve trading to the United States, owners not be responsible for any costs or expenses directly and/or indirectly arising from the fact that owners have not been able to arrange for a visaed crew list as required for United States trading.

## U.S. CUSTOMS 24 HOURS RULE CLAUSE FOR TIME CHARTER PARTIES

(A) If loading cargo destined for the U.S. or passing through U.S. ports in transit, the charterers shall:

(i) provide all necessary information, upon request by tne owners, to the Owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the U.S. customs; or

(ii) if permitted by us customs regulations (19 cfr 4.7) or any subsequent amendments thereto, submit a cargo declaration directly to the us customs and provide the owners with a copy thereof. In all circumstances, the cargo declaration must be submitted to the U.S. customs latest 24 hours in advance of loading.

(B) the Charterers assume liability for and shall indemnify, defend and hold harmless the owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with the provisions of sub-clause (a).

(C) if the vessel is detained, attached, seized or arrested as a result of the Charterers' failure to comply with the provisions of sub-clause (A), the Charterers shall provide a bond or other security to ensure the prompt release of the vessel.
Notwithstanding any other provision in this Charter Party to the contrary, the vessel shall remain on hire.

## BIMCO ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and the Company (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the Owner (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or the Company / Owner to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all sub-charterers are likewise provided to the Owners and the Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

ORIGINAL

**Ace Chartering S.A.**

**Additional Clauses to M.V. "SD Glory"
Charter Party dated 25th April 2007**

The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners .

(ii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Footnote: This Clause replaces previously published ISPS Clause for Time Charter Parties AND the US Security Clause for Time Charter Parties, both of which are now officially withdrawn.

**The Owners.**                                                    **The Charterers.**

FOR AND ON BEHALF
AND BY AUTHORITY OF
OWNERS

# EXHIBIT "6"

SECOND ORIGINAL

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON"                                                    Part I

| | |
|---|---|
| 1. Shipbroker:<br><br>UPC SHIPPING LTD.<br>CARRIERS CHARTERING CORP SA. | |
| | 2. Place and date<br>HONG KONG 7TH NOVEMBER 2005 |
| 3. Owners/Place of business (Cl. 1)<br><br>DISPONENT OWNERS:<br>KYMA SHIPPING CO.<br>GREECE | 4. Charterers/Place of business (Cl. 1)<br><br>PROSPERITY SHIPPING LTD.<br>HONG KONG |
| 5. Vessel's name (Cl. 1)<br>M.V. "SD GLORY" OR SIM. SUB. | 6. GT/NT (Cl. 1)<br>35954/21592 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br><br>68,634 MT | 8. Present position (Cl. 1)<br><br>TRADING |
| 9. Expected ready to load (abt.) (Cl. 1)<br>25 NOV 2005 | |
| 10. Loading port or place (Cl. 1)<br><br>1sb/sa Nantong/Zhenjiang/Zhangjiagang, China,<br>PICO, 2nd loadport: completing 1sbp Zhoushan (topping off) | 11. Discharging port or place (Cl. 1)<br><br>1sb 1sp Valencia port, Spain |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br><br>63,000 MT CLINKER IN BULK 10% MORE OR LESS IN OWNERS OPTION | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>USD20.00 PER METRIC TON FIOST BASIS 2/1 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>SEE CLAUSE NO. 21 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>GEARLESS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b).    If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6)<br>TO BE ADVISED | (a) Laytime for loading<br>SEE CLAUSE NO. 22 + 28 |
| 18. Agents (loading) (Cl. 6)<br>SEE CLAUSE NO. 24 | (b) Laytime for discharging<br>SEE CLAUSE NO. 23 + 28 |
| 19. Agents (discharging) (Cl. 6)<br>SEE CLAUSE NO. 24 | (c) Total laytime for loading and discharging<br>SEE CLAUSE NO. 28 |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br><br>SEE CLAUSE NO. 26 | 21. Cancelling date (Cl. 9)<br>LAYCAN 25 NOV — 10 DEC 2005 to be narrowed to 7 days spread by 15 NOV 2005 |
| | 22. General Average to be adjusted at (Cl. 12)<br>LONDON |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c))<br>SEE CLAUSE NO. 34 | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br><br>ARBITRATION IN LONDON WITH ENGLISH LAW TO APPLY. | 1.25% TO UPC SHIPPING LTD.<br>1.25% TO CARRIERS CHARTERING CORP SA<br>PAYABLE BY OWNERS. |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD50,000 | 26. Additional clauses covering special provisions, if agreed<br>20-37 TO BE INCLUDED IN THIS C/P. |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II.    In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| For and on behalf of | For and on behalf of |
|---|---|
| Signature (Owners)    KYMA SHIPPING CO. | Signature (Charterers) PROSPERITY SHIPPING LIMITED |
| | Authorized Signature(s) |

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

C.23        Printed and sold by Witherby & Company Limited, 32/36 Aylesbury Street, London EC1R 0ET,  Tel. No. 0171 251 6341   Fax No. 0171 251 0349<br>by authority of The Baltic and International Maritime Council, (BIMCO) Copenhagen.

# KYMA SHIPPING CO - GREECE

3rd February '06

### RE: M/V SD GLORY - PROSPERITY CP 07/11/2005
### FINAL FREIGHT STATEMENT

| | | | | | | DEBITS | CREDITS |
|---|---|---|---|---|---|---|---|
| FREIGHT | | | | | | | |
| 66.442.900 | Mt | @ | $ | 20.00 | Per Mt | $ 1,328,858.00 | |
| DEMURRAGE | | | | | | | |
| COMMISSION | | | | | | | $ - |
| DESPATCH | | | | | | | $ 8,492.08 |
| CHARTERERS REMITTANCE DATED 20/12/05 | | | | | | | $ 1,262,415.10 |
| | | | | | | $ 1,328,858.00 | $ 1,270,907.18 |
| DUE TO OWNERS | | | | | | | $ 57,950.82 |
| | | | | | | $ 1,328,858.00 | $ 1,328,858.00 |

PAYABLE IN U.S. DOLLARS TO:

BANQUE NATIONALE DE PARIS-PARIBAS
ATHENS BRANCH-GREECE
SWIFT: BNPAGRAA

CORRESPONDENT BANK: BNP PARIBAS-NEW YORK
SWIFT: BNPA US 3N

for credit of the account no: 010367 001 56 USD
IBAN GR37 0700 2040 0000 0010 3670 156 of:
KYMA SHIPPING CO, GREECE c/o WORLD MANAGEMENT INC

**Code Name: Norgrain**

RECOMMENDED BY
NORTH AMERICAN EXPORT GRAIN ASSOCIATION
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
CHAMBER OF SHIPPING OF THE UNITED KINGDOM
FEDERATION OF NATIONAL ASSOCIATIONS OF SHIP BROKERS AND
AGENTS

AMENDED 1/8/74

# NORTH AMERICAN GRAIN CHARTERPARTY 1973

ISSUED BY THE ASSOCIATION OF SHIP BROKERS AND AGENTS (U.S.A.) INC.

*Hamburg, the 30th, December -to 2005* ..................... 1

**Owners**

IT IS THIS DAY MUTUALLY AGREED, between *SEA MASTER LEGEND S.A., Panama (Manager: World Management Inc, Piraeus/Greece)* ...............

Owners | ——— | Self/Un-Self Trimming *Singledeck* Bulk Carrier ..... 2

*Note: Delete as* | Disponent Owners | -of the — *Greek* flag, ......... SS/M.V. Tween Decker *"SD GLORY"* ...... Call Sign ...... 3
*appropriate* | Time-chartered Owners | | Tanker ...... 4
| Chartered Owners | *For vessel's description see Clause 65.* ...... 5

**Description** | Built ...... *1987* ...... of ...... tons of 2,240 lbs. ...... 6
**of Vessel** | deadweight all told, or-thereabouts, and with a grain cubic capacity available for cargo of ...... cubic feet or (including) ...... cubic feet in self-trimming wing ...... 7
| space) ...... 8

**Classification** | Classed *NS (BC.SHC 2,4,6 E) ESP MNS CMS* ...... in *NKK* ...... now *ETA Valencia to discharge clincker 18th Jan, ETS 22nd Jan, 2006 –* ...... 9
*Note: Insert* | *agw/wp/ace – ETA and expected loadreadiness: 6/7 Feb, 2006 - agw/wp/ace* ...... 10
*vessel's itinerary* | ...... 11
| ...... 12
| ...... Charterers ...... 13

**Charterers** | and *ADM SHIPPING CO.* ...... of *Decatur, IL* ...... 13

1.—That the said vessel, being tight, staunch and strong and in every way fit for the voyage, shall with all possible (see Cl. 62) convenient speed proceed to *one or* ...... 14

**Loading** | *two safe berth(s)/place(s)/anchorage(s) in Charterers' option ITACOATIARA* ...... and there load ...... 15
**Port(s)** | at ...... safe loading berth(s) in Charterers' option ...... 16
| always afloat, a full and complete *part* cargo in bulk of *HEAVY GRAIN and/or SOYBEANS and/or SORGHUMS, stowing maximum 50'* ...... 17

**Description** ...... 18
**of Cargo** ...... 19
| ...... 20
| *commodities* at Charterers' option ...... *53,000* ...... tons of 2,240 lbs.*/1,000 kilos.* ...... *5 (five)* ...... % more or less, quantity at Owners' option. ...... 21
| ...... 22

**Notice and** | 2—Owners are to give Charterers (or their Agents) (telegraphic advice)* *e-mail: operations@adinworld.com and chartering@lf-navigator.de* *-takes ...... 23
| number* ...... 23
**Loading Port** | 15 / 10 and 7 days' notice of vessel's expected readiness to load duty, and approximate quantity of cargo required with the 15 days' notice, such quantity to be based on ...... 24

*"SD GLORY" - 30th Dec., 2005*

| | |
|---|---|
| | 25 |

**Orders.**

~~a cargo of Heavy Grain, rules the cargo composition has been declared or cautioned~~ 26

The Charterers are to be kept continuously advised by telegram/telex of any alteration in vessel's readiness to load date.

~~Master to apply to .................................................. (telegraphic address).~~ 27
~~for first or sole loading port orders 144 hours before vessel's expected readiness to load, but not sooner than 144 hours before the laydays in Clause 4, and~~ 28
~~Charterers or their Agents are to give orders for first or sole loading port within 72 hours of receipt of Master's application, unless given earlier.~~ 29

Orders for second port to Floading, if used, to be given to the Master not later than .............................................................. 30

Master is to give Charterers (or ~~and~~ their Agents) 72 and 12 hours' notice of vessel's estimated time of arrival at first or sole loading port together with vessel's estimated 31
readiness to load date. 32
33

**Vessel**

3.—Vessel to load under inspection of *an independent surveyor* ~~National Cargo Bureau, Inc., in the U.S.A., ports or of the Port Warden in Canadian ports. Vessel also to~~ 34

**Inspection.**

~~load under inspection of a Grain Inspector licensed/authorised by the United States Department of Agriculture pursuant to the U.S. Grain Standards Act and/or of a Grain~~ 34
~~Inspector employed by the Canada Department of Agriculture, as required by the appropriate authorities.~~ 35
36

~~If vessel loads at other than U.S. or Canadian ports, she is to load under inspection of such national and/or regulatory bodies as may be required.~~ 37

Vessel is to comply with the rules of such authorities, and shall load cargo not exceeding what she can reasonably stow and carry over and above her Cabin, Tackle, 38
Apparel, Provisions, Fuel, Furniture and Water. Cost of such inspections shall be borne by Owner. 39

**Lay/days/**
**Cancelling.**

4.—Laytime for loading, if required by Charterers, not to commence before 0000 **0000** on the .................... 3rd .................... day of .................... *February* .................... 40

Should the vessel's notice of readiness not be tendered and accepted as per Clause 17 before 1200 **2400** on the .............................................. 13th .............................................. day 41
~~of .................... February~~ 19 2006, the Charterers or their Agents shall at any time thereafter, but not later than one hour after the notice of 42
of .................... 19 2006, the Charterers or their Agents shall at any time thereafter, but not later than one hour after the notice of 43
readiness is tendered, have the option of cancelling this Charterparty. 44

**Destination.**

5.—On being so loaded, the vessel shall proceed to **one or two safe berth(s) in Charterers' option ROTTERDAM or HAMBURG** 45
46

as ordered by Charterers/Receivers, and deliver the cargo, according to Bills of Lading at .................... ~~safe discharging berths in Charterers/~~ 47
option, vessel being always afloat, on being/having been paid freight as per Clauses 8 and 9. 48
49

~~Master to apply by telex to Charterers/Receivers*/Agents (telegraphic address) ..............................................~~ ~~) for first or sole discharging port orders 96~~ 50
~~hours before vessel is due off first .............................................................................................................~~ ~~and~~ 51
Charterers/Receivers*/Agents are to give first or sole discharging port orders **latest 10(ten) days after vessel's sailing from loading port.** ~~by wireless within 48~~ 52
~~hours of receipt of Master's application unless given earlier. If~~ ~~Charterers/Receivers* (or their Agents) shall be 52 hours instead of 48 hours;~~ 53
~~Master's application is received not later than ................. the time allowed to Charterers/Receivers* (or their Agents) shall be 52 hours instead of 48 hours;~~

Orders for second and/or third port(s) of discharge are to be given to the Master not later than at first or sole subsequent ports 54

**Discharging**
**Port Orders.**

**Bills of**
**Lading.**

Master to radio Charterers/Receivers* (or **and** their Agents) 72 and 24 hours notice of vessel's estimated time of arrival at first or sole discharging port. Charterers/ 55
Receivers* (or their Agents) are to be kept continuously advised by radio/telegram/telex of any alterations in such estimated time of arrival. 56

6.—~~The Master is to sign Bills of Lading as presented or~~ ~~on the North American Grain Bill of Lading form, without prejudice to the terms, conditions and~~ 57
~~exceptions of this Charterparty. If the Master elects to delegate the signing of Bills of Lading to his Agents he shall give them such power of attorney in writing,~~ 58
~~copy of which is to be furnished to Charterers. See Clause 53.~~ 59

"SD GLORY" - 30th Dec., 2005

**Rotation of Ports.**

7. — Rotation of loading ports to be in Owners'/Charterers' option

Rotation of discharging ports to be in Owners'/Charterers' option; but if more than two (2) ports of discharge are used rotation is to be geographic.

to ...................... 

**Freight**

8. — Freight to be paid as follows:   US-$ 23.50 if Rotterdam discharge
US-$ 23.75 if Hamburg discharge
all per mton FIO spout trimmed

per ton of 2,240 lbs/1,000 Kilos*.

Charterers have the option of loading the vessel to load in

in which case at rate of freight to be
per ton of 2,240 lbs/1,000 Kilos*

Charterers/Receivers have the option of ordering the vessel to discharge at
in which case at rate of freight to be
If more than one port of loading and/or discharging is used, the rate of freight shall be increased by ...................... per ton of 2,240 lbs/1,000 Kilos* for
each additional loading and/or discharging port on the entire cargo.

**Freight Payment.**

9. — (a) If vessel discharges in the United Kingdom including Northern Ireland, freight shall be payable by Receivers'/Charterers' concurrently with discharge on out-turn weight, to Owners or their designated Agents at ...................... in ...................... currency

(b) For all other destinations: 95% freight shall be fully prepaid basis one dischargeport less Charter Party commissions within 3(three) banking days after on board signed Bills of Lading marked 'freight prepaid' as per Charter Party against Charterers' written confirmation that 95% freight will be paid as per Charter Party. Charterers' option to issue Bills of Lading marked 'freight prepaid' in which case Owners to authorise release of Bills of Lading upon receipt of Charterers' bank's written confirmation that 100% freight as above have been irrevocably transferred to Owners' bank. Balance freight to be settled after final discharge together with final account including demurrage/despatch within 30(thirty) days after receipt by Charterers of all relevant documents including laytime statements/statements of facts/notices of readiness for all ports. in ...................... currency to

on Bill of Lading weight. The freight is payable discountless, non returnable, vessel and/or cargo lost or not lost. Freight shall be deemed earned as cargo is loaded on board.
Once the Bills of Lading have been signed, and Charterers call for surrender of Original Bills of Lading against freight payment above, it will be incumbent upon Owners or their agents to comply immediately with such call for surrender during office hours, Mondays to Fridays inclusive.

(c) The freight shall be paid to: THE ROYAL BANK OF SCOTLAND PLC, 61 AKTI MIAOULI, PIRAEUS – GREECE
SWIFT: RBOSGRAA
CORRESPONDING BANK: DEUTSCHE BANK TRUST COMPANY AMERICAS
NEW YORK – SWIFT: BKTRUS33
FOR CREDIT OF THE ACCOUNT NO: 583 871 100
IBAN: GR32 0640 0010 0000 0058 3871 100
OF: WORLD MANAGEMENT INC

60
61
62
63
64
65
66
67
68
69
70
71
72
73
74
75
76
77
78
79
80
80
80
80
80
80
80
80
81
82
83
84
85
86
87
87
87
87
87
87

## SEA MASTER LEGEND SA - PANAMA

1st April '06

### RE: M/V SD GLORY - A.D.M. CP 30/12/2005
### FINAL FREIGHT STATEMENT

| | DEBIT | CREDIT |
|---|---|---|
| FREIGHT 53,902.815  Mt  @  $  23.75  Per Mt | $ 1,280,191.86 | |
| DEMURRAGE | | |
| COMMISSION 6.25% | | $ 80,011.99 |
| DESPATCH | | $ 33,770.83 |
| CHARTERERS REMITTANCE DATED 17/02/06 | | $ 1,124,210.59 |
| CHARTERERS REMITTANCE DATED 08/03/06 | | $ 11,959.69 |
| | $ 1,280,191.86 | $ 1,249,953.10 |
| DUE TO OWNERS | | $ 30,238.76 |
| | $ 1,280,191.86 | $ 1,280,191.86 |

PAYABLE IN U.S. DOLLARS TO:

BNP PARIBAS
NEW YORK
SWIFT: BNPA US 3N

FOR IMMEDIATE TRANSFER TO:

BNP PARIBAS
ATHENS BRANCH - GREECE
ACCT NBR: 010365 003 68
IBAN: GR37 0700 2040 0000 0010 3650 368
IN FAVOUR OF: SEA MASTER LEGEND SA

SECOND OF FINAL

| 1. Shipbroker | |
|---|---|
| UPC SHIPPING LTD.<br>CARRIERS CHARTERING CORP SA. | 2. Place and date<br>HONG KONG 10TH JANUARY 2006 |
| 3. Owners/Place of business (Cl. 1)<br>DISPONENT OWNERS:<br>GOLDEN UNION ENTERPRISE S.A.<br>PANAMA | 4. Charterers/Place of business (Cl. 1)<br>PROSPERITY SHIPPING LTD.<br>HONG KONG |
| 5. Vessel's name (Cl. 1)<br>GOLDEN UNION TBN | 6. GT/NT (Cl. 1)<br>TO BE ADVISED |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>TO BE ADVISED | 8. Present position (Cl. 1)<br>TRADING |
| 9. Expected ready to load (abt.) (Cl. 1)<br>TO BE ADVISED | |
| 10. Loading port or place (Cl. 1)<br>1sb/sa Nantong/Zhenjiang/Zhangjiagang, China,<br>PICO, 2nd loadport: completing 1sbp Zhoushan (topping off)<br>OR CHOTPN 1SBP Llianyungang | 11. Discharging port or place (Cl. 1)<br>1sb 1sp Valencia port, Spain |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br>MINIMUM/MAXIMUM 60,000/71,500 MT EXACT QTTY IN OWNERS OPTION CLINKER IN BULK<br>5 (FIVE) FIRM CARGOES CHOPTN ADDITIONAL 1 CARGO.<br>1ST SHIPMENT FEB 2006 FOLLOWED BY 4 SHIPMENTS EVERY 2 MONTHS. I.E. APRIL/JUNE/AUG/OCT 2006<br>CHRS OPTION ONE ADDITIONAL CARGO IN DEC 2006<br>SUCH OPTION TO BE DECLARED LATEST 15/SEPT/2006 | | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>USD16.30 / METRIC TON FIOST BASIS 2/1 BSS TOP OFF ZHOUSHAN<br>USD17.00 / METRIC TON FIOST BASIS 2/1 BSS TOP OFF LIANYUNGANG | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>SEE CLAUSE NO. 21 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>GEARLESS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If Total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6)<br>TO BE ADVISED | (a) Laytime for loading<br>SEE CLAUSE NO. 22 + 28 |
| 18. Agents (loading) (Cl. 6)<br>SEE CLAUSE NO. 24 | (b) Laytime for discharging<br>SEE CLAUSE NO. 23 + 28 |
| 19. Agents (discharging) (Cl. 6)<br>SEE CLAUSE NO. 24 | (c) Total laytime for loading and discharging<br>SEE CLAUSE NO. 28 |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>SEE CLAUSE NO. 26 | 21. Cancelling date (Cl. 9)<br>TO BE ADVISED |
| | 22. General Average to be adjusted at (Cl. 12)<br>LONDON |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c))<br>SEE CLAUSE NO. 34 | 24. Brokerage commission and to whom payable (Cl. 15)<br>2.5% ADDRESS COMMISSION TO CHARTERERS |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed<br>also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>ARBITRATION IN LONDON WITH ENGLISH LAW TO APPLY. | 1.25% TO UPC SHIPPING LTD.<br>1.25% TO CARRIERS CHARTERING CORP SA<br>PAYABLE BY OWNERS. |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD50,000 | 26. Additional clauses covering special provisions, if agreed<br>20-37 TO BE INCLUDED IN THS C/P. |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Disponent Owners) | Signature (Charterers) |
|---|---|
| | |

Copyright, pu
and internatio.. aritime
Council (BIMCO), Copenhagen
3 by The Baltic

## GOLDEN UNION ENTERPRISES SA - PANAMA

31st July '06

### RE: M/V SD GLORY - PROSPERITY CP 10/01/2006
### FINAL FREIGHT STATEMENT

| | | | | | | | DEBIT | CREDIT |
|---|---|---|---|---|---|---|---|---|
| FREIGHT | | | | | | | | |
| 66,616.000 | Mt | @ | $ | 16.30 | Per Mt | | $ 1,085,840.80 | |
| DEMURRAGE | | | | | | | | |
| COMMISSION | | | | | | | | |
| 5.00% | | | | | | | | $ 54,292.04 |
| DESPATCH | | | both ends | | | | | $ 3,317.96 |
| CHARTERERS REMITTANCE DATED 28/06/06 | | | | | | | | $ 977,236.72 |
| | | | | | | | $ 1,085,840.80 | $ 1,034,846.72 |
| DUE TO OWNERS | | | | | | | | $ 50,994.08 |
| | | | | | | | $ 1,085,840.80 | $ 1,085,840.80 |

PAYABLE IN U.S. DOLLARS TO:

DnB NOR BANK ASA
LONDON BRANCH
20 ST. DUNSTAN'S HILL, LONDON EC3R 8HY
SWIFT: DNBAGB2L
ATT: CORINNE LANGFORD
FAX: 00044-207-283-4430
CORRESPONDING BANK:
BANK OF NEW YORK, N.Y., USA
SWIFT: IRVTUS3N

FOR CREDIT OF THE ACCOUNT NO: 59060001
IBAN: GB21DNBA40511459060001
OF: GOLDEN UNION ENTERPRISES S.A.

# EXHIBIT "7"

# UNITOR®

**Unitor Ships Service (S) Pte Ltd**
No. 6, Penjuru Lane
Singapore 128476

Phone: +65 6395 4545
Fax: +65 6778 3611

19/12/05 (osq)

**INVOICE**

| | |
|---|---|
| Port of delivery | : SINGAPORE |
| Order no. | : 710153994 |
| Date of delivery | : 26-10-2005 |
| Delivery note no. | : 1228367 |

| | |
|---|---|
| Delivered to | : 1996528 SD GLORY |
| Conveyance | : ROAD |
| Order reference | |
| Shipping marks | |
| Place of delivery | |

| Page | : (1) |
|---|---|
| Invoice no. | : 15CD120899 |
| Invoice date | : 31-10-2005 |
| Customer no. | : 868865 |
| Terms of payment | : 30 Days Net |
| Due date | : 30-11-2005 |

When remitting
please make
reference to our
INVOICE and
CUSTOMER NO

SEAMASTER LEGEND S.A. C/O
WORLD MANAGEMENT INC.
65 - 67 DRAGATSANIOU STR
185 45 PIRAEUS

GREECE

"All business sales and supplies concluded with, undertaken or provided by Unitor ASA, its subsidiaries are subject to the Unitor Conditions for Sale Of Goods and Supply of Gas Cylinders printed on the reverse side hereof. Copies at the Unitor Conditions for Sale of Goods and Supply of Gas Cylinders are also available on request."

| PROD.GROUP ARTICLE NO. | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE AT PLACE OF DELIVERY | CURR. | AMOUNT | AMOUNT INVOICED | CURR. |
|---|---|---|---|---|---|---|---|---|
| 650-571133 | FUELCARE 25 LTR | 800 | LTR | 4,94 | USD | | 3 952,00 | USD |
| 990-6665555 | DELIVERY CHARGE ON REQUEST | 1 | PCS | 0,01 | USD | | 0,01 | USD |
| | | | | | | | 3 952,01 | USD |
| | GST 0% Customer Order | | 0 % OF | 3 952,01 | USD | 1,692600 = SGD | 0,00 | USD |
| | | | | | | | 3 952,01 | USD |

Our: Our Tax Invoice GST No        M2-0022967-3

Our RCB registration number 19750194BR

Shes

L/Avelos-19/12
19/12/2005

**This Invoice has been factored to Unitor ASA**
Please remit to:
Unitor ASA
Commonsveien 175 P.O.Box 300 N-0213 OSLO
NORWAY

Bankers:
Danske Bank
P.O. Box 500, Sentrum, 0105 Oslo
NORWAY

Account no:
0700 05 10723
IBAN-
NO8207600510723

BIC/SWIFT:
DABANOKX

# TAX INVOICE
GST Reg. No.: 19-9606263-C

**V.Ships Agency Pte Ltd**
10 Anson Road
#33-15 International Plaza
Singapore 079903
Tel  : (65) 6885 0510
Fax : (65) 6272 3850
E-mail: agency.singapore-ivships.com
www.vships.com
Company Reg. No: 199606263C

## V.Ships
### Agency

### No. 4268

| REF. NO: | J0285/05 |
|---|---|
| Date  : | 07.12.2005 |

FINAL PORT DISBURSEMENT ACCOUNT

To:        **WORLD MANAGEMENT INC**
Address:   65-67 Dragatsaniou Street
           18545 Piraeus
           Greece.

| | | | |
|---|---|---|---|
| Vessel : | **MV 'SD GLORY' EX. "** | Port: | **Singapore** |
| Arrived | **26.10.05** | From | **Outside Port Limits** |
| Departed: | **26.10.05** | To: | **Outside Port Limits** |
| GRT: | **35,954** | | |
| Length: | | | |

**For services rendered in connection with subject vessel's call at Singapore**

| Description | Voucher no. | SGD | USD |
|---|---|---|---|
| Port Expenses | 1 | 1,630.00 | |
| Total Disbursement Expenses | | 1,630.00 | |
| Less: Remittance Received - 27.10.05 | | (1,630.00) | (1,000.00) |
| Balance in our favour | SGD | - | |
| or USD @        1.63 | USD | - | |

V.Ships Agency Pte Ltd
Bank        : Citibank Singapore
USD Account : 0-810810-068
SGD Account : 0-810810-033 (Singapore Dollars)
Swift Code  : CITISGSG

V SHIPS AGENCY PTE LTD

# EXHIBIT "8"

MV SD GLORY / INDUSTRIAL CARRIERS CP 29.08.2005

STATEMENT OF ACCOUNTS

| | | | | | DEBIT, USD | CREDIT, USD |
|---|---|---|---|---|---|---|
| **CHARTER HIRE :** | | | Rate, USD/day : | 17 220 | | |
| | | GMT | | Days | | |
| | From: | 03:20 | 10/09/05 | | | |
| | To: | 09:40 | 08/11/05 | 59,26389 | | 1 020 524,17 |
| **COMMISSION :** | | | | 3,75% | 38 269,66 | |
| OFF-HIRE DUE TO STOPPAGE TO REPLACE VALVES | | | | | | |
| | | LT | | Days | | |
| | From: | 01:00 | 22/10/05 | | | |
| | To: | 03:30 | 22/10/05 | 0,10417 | 1 793,75 | |
| COMMISSION ON OFF-HIRE : | | | | 3,75% | | 67,27 |
| IFO CONSUMED DURING OFF-HIRE | | | | 0,2083 | 64,58 | |
| MDO CONSUMED DURING OFF-HIRE | | | | 0,1042 | 64,58 | |
| **BUNKERS ON DELIVERY :** | | | | | | |
| | | | | Price, USD/mt | | |
| | IFO | 1279,200 | MT | 310 | | 396 552,00 |
| | MDO | 110,120 | MT | 620 | | 68 274,40 |
| **BUNKERS ON REDELIVERY :** | | | | | | |
| | | | | Price, USD/mt | | |
| | IFO | 1262,500 | MT | 310 | 391 375,00 | |
| | MDO | 84,900 | MT | 620 | 52 638,00 | |
| **C/EV :** | | | Rate, USD/pmpr | 1 250 | | 2 431,22 |
| **ILOHC** | | | | | | 5 000,00 |
| **BALNCE DUE TO CHARTERERS ON MV 'SD TRIUMPH' CP DD 30.10.2001** | | | | | 7 308,57 | |
| **OWNERS EXPENSES RESERVED** | | | | | 1 000,00 | |
| **REMITTANCES DONE :** | | | | paid on 13.09.2005 | 548 306,41 | |
| | | | | paid on 29.09.2005 | 232 614,85 | |
| | | | | paid on 18.10.2005 | 82 076,73 | |
| | | | | paid on 02.11.2005 | 83 076,73 | |
| | | | | paid on 22.11.2005 | 51 499,44 | |
| | | | | | 1 490 088,30 | 1 492 849,05 |
| **BALANCE DUE TO OWNERS :** | | | | | | 2 760,75 |

EXHIBIT "9"

Det Norske Veritas
DNV Petroleum Services

VENNLIGST BETAL TIL / PLEASE REMIT TO:
Det Norske Veritas Petroleum Services
Adresse: NO-1322 HØVIK, NORWAY
Tel: +47 67 57 99.00
Fax: +47 67 57 93.93
Org.No.: NO 945 748 931 MVA
Bankers: Den NOR ASA, NO-0021 OSLO
A/c No: 6031.71.11.03.32881
SWIFT: DNBANOKK

# Kopi/Copy



World Management Inc.
65 - 67 Dragatsaniou St

185 45 Piraeus
Greece

**Faktura / Invoice No: 602762**
VENNLIGST OPPGI DETTE NR. VED BETALING / WHEN REMITTING PLEASE QUOTE THIS NO.

Prosjekt navn / Project name
Testing Fee SPOT/Additional - External
M/V SD GLORY - Ref. your fax with ref.Glo/np/07/11/05

| Deres ref. / Your ref: | Deres kontakt nr. / Your contact no. |
|---|---|
| Mr. C. Andreadis | |
| Vår ref. / Our ref: HPB | |
| Berg,Hans-Petter | |

| Dato / Date | Forfallsdato / Due date | Kunde nr / Client No. | Avd. nr / Section No. | Prosjekt nr / Project No. | DNV ID Fa.No. | Faktura / Inv. ref |
|---|---|---|---|---|---|---|
| 2006/05/04 | 2006/06/06 | 183351 | 200 | 700027154 | | |

Analysis of one fuel oil sample

Witnessing fee, 4 hours, each USD 200

Kopi/Copy

Our sample no. N105001254
Received date: 28.11.05
Reported date: 23.12.05

| | | | | 9 | 70000 | 610,00 |
| | | | | 9 | 70000 | 800,00 |

~~PAYMENT DUE~~
~~PLEASE PAY PROMPTLY~~

| Netto Beløp / Net Amount: | Merverdiavgift / Value added tax | TOTAL USD | 1.410,00 |
|---|---|---|---|
| 1.410,00 | 0,00 | | |

Betalingsbetingelser: Netto pr. 30 dager. Morarenter belastes med 9,25% p.a.
Terms of payment: Net cash 30 days. Otherwise, interest of 9,25% p a. will be charged.

L/AC 06 - 642 3-4

5. DEC. 2006 14:19      A. BILBROUGH                        NO. 2917    P. 3

Invoice Number : 6005        Club Ref : HEB/D.252/05ch         Date : 17-Jan-...   Page 1 of 2

*To : Claims Technicians*
*Our ref : HEB/D.252/2005*

## WESMANS AS
Invoice

## Section 1: General Information

| Date: 17-Jan-2006 | Invoice Number: | **6005** | | Period : 07-Nov-2005  To  20-Dec-2005 |

Final Invoice: YES

To: Owners of SD Glory
c/o: The London Steam-Ship
Owners' Mutual Insurance
Association Ltd.                                    Invoice From: WESMANS AS
Address: 50 Leman Street
London                                          Address: P.O. Box 638 Sentrum
E1 8HQ                                                        NO-0106 OSLO
UK
Contact Name: Helena E. Biggs                            Tel: +47 40 00 43 88
Email: Helena.Biggs@a-bilbrough.com               Fax: +47 22 41 41 10
VAT Number: 244 3715 70                          Contact Name: Karl Erik Prestorud
Email: kep@wesmans.com

| Club Reference: | **HEB/D.252/05ch** | Supplier Reference: | **A51172** |

Vessel Name: SD GLORY                          Voyage Number:
Incident Date: 07-Nov-2005                      Place of Incident: Port Said, Egypt
Description: Supply of off-spec bunkers at Port Said, Oct 05

## Section 2: Payee Details

Payee Name: WESMANS AS                         Account Name: WESMANS AS
Address: P.O. Box 638 Sentrum                   Bank Name: Handelsbanken
NO-0106 OSLO                         Bank Address: P.O. Box 755 Sentrum
Norway                                                          NO-0106 OSLO
Norway
Registration:
VAT Number: 931487693                       Account / IBAN Number: 9041 05 45161
Invoice Currency: NOK                               Sort Code: NO9590410545161
Swift Code: HANDNOKK

## Section 3: Invoice Summary

| | |
|---|---|
| Total Fees: | *NOK* 6,300.00 |
| Total Disbursements: | *NOK* 570.00 |
| Total Taxes: | 0.00 |
| Total Third Party Fees: | 0.00 |
| Total Third Party Disbursements: | 0.00 |
| Total Third Party Taxes: | 0.00 |
| Amount Payable: | **NOK : 6,870.00** |

*USD 1,025.*

*Please pay*
*LE Biggs   20.0.06*

file://G:\...

SD Glory

## Job Fees

| Reference: | FOSG/05/003415/CZM | Date: 12 NOV 2005 |
|---|---|---|
| Client Name: | WORLD MANAGEMENT INC | |
| CFO Name: | PIL 3000504 | |
| CFO Region: | EMEA | |
| Ship: | SD GLORY | |
| IMO Number: | 8419893 | |

| Description | Price |
|---|---|
| Sample 1 HFO Full Routine Analysis Seal: CB 0032334, | 290 |
| Extra Test: Toluene wash Toluene wash [GRAVIMETRIC] | 21.19 |
| Extra Test: TSE - NO CHARGE [ISO 10307-2/IP375] | 0 |
| Extra Test: TSP - NO CHARGE [ISO 10307-2/IP390A] | 0 |
| Bottle Cost | 0 |
| Courier Cost | 0 |
| Sample 2 HFO Full Routine Analysis Seal: CB 0032324, 0032838 | 290 |
| Extra Test: Toluene wash Toluene wash [GRAVIMETRIC] | 21.19 |
| Extra Test: TSE - NO CHARGE [ISO 10307-2/IP375] | 0 |
| Extra Test: TSP - NO CHARGE [ISO 10307-2/IP390A] | 0 |
| Bottle Cost | 0 |
| Courier Cost | 0 |
| Sample 3 HFO Full Routine Analysis Seal: CB 0032335 | 290 |
| Extra Test: Toluene wash Toluene wash [GRAVIMETRIC] | 21.19 |
| Extra Test: TSE - NO CHARGE [ISO 10307-2/IP375] | 0 |
| Extra Test: TSP - NO CHARGE [ISO 10307-2/IP390A] | 0 |
| Bottle Cost | 0 |
| Courier Cost | 0 |
| Sample 4 HFO Full Routine Analysis Seal: CB 0032329, 0032837 | 290 |
| Extra Test: Toluene wash Toluene wash [GRAVIMETRIC] | 21.19 |
| Extra Test: TSE - NO CHARGE [ISO 10307-2/IP375] | 0 |
| Extra Test: TSP - NO CHARGE [ISO 10307-2/IP390A] | 0 |
| Bottle Cost | 0 |
| Courier Cost | 0 |
| Consultancy Hours 0 @ Rate 0 USD | 0 |



|  | 0 |
|  | 0 |
|  | 0 |
|  | 0 |
|  | 0 |
| Total | 1,244.76 USD |

| Notes: |

5. DEC 2006 14:19 (u. Cla. A.BILBROUGH Technician)    NO. 2917   P. 2

Our ref: HEB/D.252/2005

## DEBIT   NOTE(interim)

TO: A. BILBROUGH & CO.LTD

Y/ref: unknown
O/ref: HTQD(05)/P&I/LSD/0511178/DF
RE: M.V. "S D Glory" at the port of Lianyungang
Bunker Sampling

| DESCRIPTION | AMOUNT (USD) |
|---|---|
| Bail fee (1%) | USD------ |
| Surveyor's fee — see attached | USD918.00 |
| Service Fee | USD240.00 |
| Disbursement | USD50.00 |
| **TOTAL** | USD1208.00 |

Please pay
PBriggs
20.01.06

Total USD: ONE THOUSAND TWO HUNDRED EIGHT ONLY

Please remit the amount of USD1208.00 to the following accounts at days sight of this
Debit Note, otherwise it will be calculated with interests@__% per year:

Beneficiary: Huatai Insurance Agency & Consultant Service Ltd.
Bank Name: Bank of China Beijing Jin Rong Jie Sub-branch
Bank Address: 27 Jinrongjie, Xincbeng district, Beijing China

Account No: 8112 1575 3108 4800 14   swift code: BKCH CN BJ 110

Whilst remittance, please quote our ref no. HTQD(05)/p&i/LSD/0511178/DF in your
remittance documents.

Huatai Insurance Agency & Consult ant Service Ltd. Qingdao Branch



**EXHIBIT "10"**



Bunker Claims International Ltd.

Sunnymead, Lewes Road
South Chailey, East Sussex, BN84AH

Telephone (0044) (0) 1273 400 360
Fax (0044) (0) 1273 401 803
Email : bunkerclaims@btinternet.com
Mobile : (44) (0) 7717872095

Norton Rose
5, Hatzigianni Mexi Street
Athens
Greece

Attention: Marie Kelly                          January 24th 2006


Dear Sirs,

            Re: " SD Glory" Bunker Dispute. Port Said October 2005

Please find enclosed our invoice for services provided during December 2005
and January this year.
If we may be of further assistance please do not hesitate to contact us.


Yours truly

C.Fisher, Director, Bunker Claims International Ltd.

encl. invoice 1075/01/06

Company Registration number 4964759

To
Star Legend SA Panama
c/o Norton Rose
5 Hatzigianni Mexi Street
Athens
Greece

Attention: Marie Kelly

Bunker Claims International Ltd.
"Sunnymead"
Lewes Road
South Chailey
East Sussex
BN84AH
United Kingdom

## <u>INVOICE</u>

Number 1075/01/06

Date 23/01/06



Re. SD Glory – Bunker Dispute, Port Said 7th October 2005

| | GBP |
|---|---|
| Reading of documents and providing draft report On December 29th and further replies on January 3rd. | |
| Total 7 hours @ £112/hour | 784.00 |
| | |
| Total GBP | 784.00 |

Please remit to :- Barclays. Burgess Hill Branch, 1,Church Road, Burgess
Hill, West Sussex, RH159BD, United Kingdom
Account Name. Bunker Claims International Ltd.Sort Code. 20-49-80
Account Number 80144738
IBAN No. IBAN-GB42-BARC-2049-8080-1447-38

2|2|06

# EXHIBIT "11"

# SUMMARY OF ESTIMATED ADDITIONAL COSTS, FEES AND DISBURSEMENTS

| DESCRIPTION OF SERVICE, COST, FEE OR DISBURSEMENT | AMOUNT IN USD |
|---|---|
| Preparation of witness statements and expert reports | $20,000 |
| Preparation for hearing and six sets of copies required by tribunal | $15,000 |
| Arbitrators' fees | $24,374 |
| Arbitration venue fee for one day | $2,000 |
| Preparation of brief for hearing lasting one day | $6,000 |
| Legal fees to attend hearing and conference prior to hearing | $13,700 |
| **TOTAL** | **$81,074** |